62 N.J. Super. 589 (1960)
163 A.2d 388
RUSSELL J. PFITZINGER, PLAINTIFF,
v.
BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF NEW JERSEY, AND DWIGHT R.G. PALMER, STATE HIGHWAY COMMISSIONER OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided August 1, 1960.
*592 Messrs. Kasen, Schnitzer and Kasen (Mr. Daniel G. Kasen, appearing), attorneys for plaintiff.
Mr. Theodore I. Botter, Deputy Attorney General, argued the cause for defendants (Mr. David D. Furman, Attorney General, attorney).
HALPERN, J.C.C. (temporarily assigned).
This is a proceeding in lieu of prerogative writs by the plaintiff, Russell J. Pfitzinger, to compel acceptance of his retirement and for payment of his pension as a veteran. The matter is before me now on a motion by defendant for summary judgment. A brief recital of the facts is necessary to present a picture of the situation as it existed on April 24, 1958, when plaintiff, at the age of 61, applied for retirement.
Plaintiff was first employed by the New Jersey State Highway Department on May 1, 1917. Since December 1, 1944 he held the position of senior division material inspector. He is a veteran of World War I, and is entitled to such statutory benefits as flow from that status. On January 28, 1958 Dwight R.G. Palmer, the New Jersey State Highway Commissioner, who was plaintiff's employing authority, suspended him without pay. Charges of misconduct in office were duly filed against the plaintiff resulting in the Commissioner's removing him from employment as of January 28, 1958. The Commissioner's decision was appealed by plaintiff *593 to the Civil Service Commission, which body after a de novo hearing lasting 13 days between November 24, 1958 and July 23, 1959, affirmed the Commissioner's action. The decision of the Civil Service Commission is now final in accordance with the waiver filed with this court.
The specification of the charges made by the Commissioner against the plaintiff were many and varied. Some of the charges were dismissed and on others he was found not guilty. It is essential that I briefly set forth the nature and type of charges on which he was found guilty.
(1) He was found guilty of violating the Department's regulations by remaining away from performance of his duty in taking lunch periods extending beyond the time specified in the regulations between January 17, 1953 and January 28, 1958.
(2) He was found guilty of falsifying his daily work reports in certifying to the time taken for lunch periods between January 17, 1953 and January 28, 1958, excepting the period from May 24, 1955 to October 1, 1955.
(3) He was found guilty of falsifying his daily work reports in certifying he took a one-hour lunch period, whereas he had gone to various named taverns and restaurants in different sections of the State, where he partook of lunch and liquor for periods in excess of the time reported.
(4) He was found guilty of falsifying his daily work reports in certifying he was working during regular morning hours, whereas on several occasions between November 1954 and January 1958 he was at various taverns drinking liquor. In addition, during the period from January 17, 1953 to January 28, 1958, exclusive of the period from May 24, 1955 to October 1, 1955, he falsified his daily work reports in certifying the hours worked during that period.
(5) He was found guilty of conduct unbecoming a public employee in frequently signing the name of one Lohman Palmateer as accepting responsibility for food and liquor plaintiff had consumed at the Roost Restaurant in Newark, New Jersey (the said Palmateer being the representative *594 of J. Rich Steers Company, a supplier of materials used by the State Highway Department).
(6) He was found guilty of violating Rule 59, subsection (f) of the Civil Service Commission, for being intoxicated while on duty, and for being intoxicated in a public place while off duty, in various taverns and restaurants.
(7) He was found guilty of violating Rule 19 of the Safety Manual of the New Jersey State Highway Department, effective November 1, 1945, which provides:
"19. The use of any and all kinds of intoxicants during department working hours is forbidden and WILL subject the offender to dismissal."
(8) He was found guilty of violating Rule 59, subsection (h) of the Civil Service Commission in using offensive language to certain named individuals, Joseph P. Steffer, James Ferrante, and Asa H. Farr.
(9) He was found guilty of engaging in an argument and altercation with one George C. Gilbert at the Ryland Inn, a tavern and inn near Whitehouse, New Jersey.
(10) He was found guilty of violating Rule 59, subsection (g) of the Civil Service Commission, in setting up an office for himself at the plant of the North Jersey Quarry Company (now the Houdaille Construction Company); in directing that telephone calls dealing with State Highway business be made to him at this office; in causing messages dealing with State Highway Department matters to be taken by the telephone operators and others handling telephone calls in said plant of the said North Jersey Quarry Company; in keeping at this office clipboards, work sheets and inspection reports, referring to and dealing with competitors, as well as other classified State Highway Department material, which the employees of the North Jersey Quarry Company had access to and could examine; and in permitting the keys for this office to be kept by the representatives of the North Jersey Quarry Company.
*595 (11) He was found guilty of rejecting material and equipment of the Kingston Trap Rock Company during the year 1939 until he was given $1,000, in cash, by George C. Gilbert an officer of the Kingston Trap Rock Company.
(12) He was found guilty of refusing to permit the S.J. Groves & Company to proceed with a paving contract on the Garden State Parkway in September 1949, until he was given liquor and other gratuities.
(13) He was found guilty of accepting liquor from one John Perrucci in December 1955.
(14) He was found guilty of demanding that Asa H. Farr straighten out his father-in-law under the threat that otherwise he would have limestone and slag on the quarry road.
(15) He was found guilty of demanding $1,000 from Anthony Steffer, of the Mutual Contracting Company, at the Peacock Inn, West Belmar, New Jersey, as a prerequisite to his approving gravel produced by said company.
(16) He was found guilty of threatening Carl C. Bell, a salesman of George C. Gilbert, Inc., that no equipment offered for sale by said company would ever be approved by plaintiff for use by the State Highway Department.
(17) He was found guilty of accepting payment of his expenses from Lohman Palmateer, of the J. Rich Steers Company, a supplier of materials used by the State Highway Department, at the following places and times: the Haddon Hall Hotel in Atlantic City, New Jersey, in 1957; convention expenses in Boston, Mass., in 1956; expenses at Atlantic City in 1955; expenses at a State Highway Convention in Washington, D.C., in 1954; and in accepting meals, liquor, hotel and other expenses incurred before, during and after the 1957 World Series baseball games in New York City.
(18) He was found guilty of violating Rule 59, subsection (g) of the Civil Service Commission, in that he was intoxicated in public inns, taverns and restaurants, while on official State Highway Department duties.
*596 (19) He was found guilty of refusing to submit favorable reports on material satisfactory for State Highway Department work until he was given various sorts of gratuities.
(20) He violated the Department's orders and regulations during 1956 and 1957, in that he asked and directed representatives of concerns doing business with the State Highway Department, and its contractors, to attend lunches with him, and to provide him with free liquor during and after said lunches.
(21) He was found guilty of conduct unbecoming a public employee, neglect of duty and violation of departmental regulations, by planning mid-day and luncheon drinking parties with persons and representatives of organizations doing business with the State Highway Department, and its contractors and suppliers; and that at said parties, and during official work hours, he drank liquor and remained in said places for periods of time ranging from 1 1/2 hours to 5 hours.
(22) He was found guilty of demanding and accepting lunches and liquor from representatives of the North Jersey Quarry Company, Oxford Crushed Stone Company, Colonial Concrete Company, Master Builders, Dragon Cement Company, Carnival & Son, Allied Transit Mix, and other firms doing business with the Department and supplying persons and firms doing business with the Department.
(23) He was found guilty of demanding and receiving at his home in June 1957 a case of liquor from the Mutual Contracting Company of Belmar, New Jersey.
(24) He was found guilty of accepting a case of liquor from the Colonial Sand and Gravel Company in December 1955.
(25) He was found guilty of generally violating the directives issued by various State Highway Commissioners, over the term of his employment, which provide that employees of the State Highway Department should not accept gifts or gratuities of any kind from contractors or other persons doing business with the State Highway Department.
*597 (26) He was found guilty of accepting five $300 payments during the years 1955, 1956 and 1957, from the Somerset Crushed Stone, Inc., a supplier of materials used in the construction of state highways, which materials were subject to inspection by plaintiff. At other times plaintiff refused to approve materials for the said Somerset Crushed Stone, Inc. The proofs before the Civil Service Commission on these payments consisted of oral testimony by a Mr. Ferrante, an officer of the Somerset Crushed Stone, Inc., and the records of the company which revealed that these payments were charged on the books of the corporation as travel, entertainment, advertising and as dues and subscriptions.
The Civil Service Commission summarized its findings by concluding that plaintiff was guilty of: "(a) conduct unbecoming an employee in public service; (b) neglect of duty; (c) violation of lawful and reasonable official regulations or orders made and given by your superior officer."
I pause to point out that plaintiff saw fit not to take the stand to refute or to explain the proofs adduced against him before the Commission.
The charges which resulted in the findings above set forth were made on January 8, 1958. Plaintiff was suspended from employment as of January 28, 1958, pending a determination of the charges. It was with all these charges pending against him that he applied for retirement on April 24, 1958.
In disposing of defendant's motion for summary judgment I take cognizance of the fact that such a motion, made under R.R. 4:58-1 et seq., is granted with much caution. If the facts are disputed, summary judgment should not be granted. On this type of motion the court does not try disputed fact questions on affidavits, but if all the pleadings show palpably that there is no genuine issue as to any material fact, summary judgment should be granted. The purpose of the rule is to grant relief expeditiously. It is designed to place the case before the court in its true light. *598 The burden is on the moving party to show a clear absence of a genuine fact issue, and the motion should not be granted to defeat a litigant's right to a trial on the merits unless such burden is sustained. Frank Rizzo, Inc. v. Alatsas, 27 N.J. 400 (1958).
The affidavits and exhibits presented in connection with this motion, as well as the arguments of counsel, make it quite clear that there is no real factual dispute, and the case is ripe for disposition on this motion for summary judgment.
The issue in this case is a comparatively narrow one. It is whether a public employee who has met the statutory conditions as to veteran's status, age and length of service, is entitled to be retired on pension even though there are charges of misconduct made and pending against him at the time, and on which charges he subsequently was found guilty and dismissed from the service.
Plaintiff's application for retirement is made under the provision of N.J.S.A. 43:15A-1 et seq., and in particular section 61 (a) dealing with veterans. It is undisputed that when plaintiff applied for retirement on April 24, 1958, he had veteran status, he had been in state service for more than 40 years, and he was then 61 years of age. Assuming, as I must, that the plaintiff is guilty of the charges previously referred to, and that he was properly discharged from his employment effective January 28, 1958, how can it be said that in accordance with this statute under which he seeks to retire, that he has remained "in service" and that he has the privilege of "retiring"? I am fully aware of the fact that there are many retirement statutes in our State which provide that a public employee may retire for "honorable service," and that N.J.S.A. 43:15A-61(a) has no such provision. Plaintiff contends that because the statute here in question does not contain the words "honorable service" or equivalent terms, the statute must be construed so as to entitle plaintiff to his pension, even though his service be dishonorable. This argument was disposed of *599 adversely to plaintiff by Justice Francis in Ballurio v. Castellini, 29 N.J. Super. 383, 389 (App. Div. 1954), wherein he construed a retirement statute quite similar to the one at bar, and said:
"Consideration of all these acts in the light of the sui generis character of a public pension inevitably leads to the conviction that `honorable' service is implicit in every such enactment. A pension is a bounty springing from the appreciation and graciousness of the sovereign; it is an inducement to conscientious, efficient and honorable service. And its utility would be destroyed if a person who is properly subject to discharge because of guilt of a crime involving moral turpitude can be said to have an indefensible claim to a pension simply because he has served the required length of time and reached the necessary age and happens to win a headlong race to file his application for retirement before the public authorities can try him on the charges pending against him arising from such crime."
The plaintiff stands convicted on charges which are abhorrent to every decent thinking citizen. For the courts to sanction the payment of pension benefits to plaintiff under the circumstances existing in this case would destroy the faith of the public in public pension plans which today exist in almost every field of state, county and municipal service. To reward one for disservice to the public would defeat the aims of the Legislature in providing public pensions. I could go on at great length in discussing the philosophy behind pension statutes, but my feelings are best expressed by what Justice Francis said in Ballurio, supra.
The case at bar is even stronger on its facts, from a public policy viewpoint, than the Ballurio case. In Ballurio the plaintiff was a municipal employee in the city's road department who was charged with the crime of abortion which was completely unconnected with his employment. In the instant case plaintiff's derelictions were directly connected with the duties of his position.
It is also important to take cognizance of the fact that Ballurio was decided on January 19, 1954. The Public Employees' Retirement-Social Security Integration Act, was *600 enacted on June 28, 1954, L. 1954, c. 84, effective January 1, 1955. By this subsequent legislation the Legislature must have been satisfied with the court's holding in Ballurio because it made no attempt to avoid the construction placed by the court on the issues there presented and decided.
It has long been settled in New Jersey, although there is some authority to the contrary in other jurisdictions, that a public employee loses his right to a pension when he has been removed for cause on charges of misconduct or delinquency. Plunkett v. Board of Pension Commissioners, Hoboken, 113 N.J.L. 230 (Sup. Ct. 1934), affirmed 114 N.J.L. 273 (E. & A. 1935); Ballurio v. Castellini, supra; Walter v. Police and Fire Pension Commission, Trenton, 120 N.J.L. 39 (Sup. Ct. 1938). For a full discussion of the New Jersey law, as well as the law in other jurisdictions, dealing with the vesting of pension rights, see a 1957 annotation in 52 A.L.R.2d, at p. 437 et seq.
It is plaintiff's contention that even if Ballurio represented the law of New Jersey, that an employee's right to a pension is lost when he is removed on charges of misconduct or delinquency, such law was overridden by the enactment of N.J.S.A. 43:15A-38 providing for the vesting of pension rights. The pertinent portion of the statute provides:
"Should a member of the Public Employees' Retirement System, after having completed 20 years of service, be separated voluntarily or involuntarily from the service, before reaching service retirement age (60 years of age), and not by removal for cause on charges of misconduct or delinquency, such person may elect to receive: * * *."
Plaintiff argues that the provision "removal for cause on charges of misconduct" bars a pension to one with 20 years of service only if he is under the retirement age of 60 years, and since plaintiff was involuntarily separated from the service when he was 61 years of age, his pension rights were vested and could not be affected by the dismissal. I do not agree with plaintiff's interpretation of the statute. The *601 Legislature intended to give all persons who completed 20 years of service, regardless of whether they reached retirement age, a vested right to a pension, whether they were thereafter separated voluntarily or involuntarily from the service, provided they were not removed for cause on charges of misconduct or delinquency. Had the Legislature intended to make the vesting of a pension absolute or indefensible as to persons having 20 years' service and having reached retirement age it would have so provided.
When we consider the status of pension rights of a public employee, like plaintiff, who meets the statutory requirements for retirement under N.J.S.A. 43:15A-61(a) it is obvious that such person has a vested right to his pension which cannot be arbitrarily taken away from him. N.J.S.A. 43:15A-38 does not purport to give such employee any greater benefits. In fact, N.J.S.A. 43:15A-38 creates certain pension rights only for persons having completed 20 years of service but who have not reached retirement age. To limit the exclusion clause "and not by removal for cause * * *" only to persons not having reached retirement age would do violence to the statutory objective, and would be reading a provision into the statute which was not enacted by the Legislature.
In construing the legislative intent we must look to the objective sought to be attained, the nature of the subject matter, the contextual setting, and all statutes in pari materia. The statute must be construed as a whole with reference to the system of which it is a part. State v. Brown, 22 N.J. 405 (1956). Nor will a statute be construed so as to reach an absurd or anomalous result. Robson v. Rodriquez, 26 N.J. 517 (1958).
With these principles in mind I am unable to say that the Legislature intended to give persons in plaintiff's classification an absolute or indefensible vested right to a pension. It is more reasonable to say that the Legislature, in enacting N.J.S.A. 43:15A-38, was adopting the philosophy expressed in Ballurio, supra.
*602 While the courts and the pension statutes speak of "misconduct" or "delinquency" which will bar a public employee's right to a pension, there is no specified definition for what conduct falls into these categories. Each case must be decided on its own merits in the light of the public position held by the individual involved. I have no doubt that plaintiff would have been guilty of the statutory crime of extortion, or the common-law offense of misconduct in office, or both, with respect to some of the charges of which he was found guilty. Of course in a departmental hearing, or a Civil Service Commission hearing, to justify a removal from office, proof of guilt on such charges is not required to the same degree as would be required in a criminal trial. Evans v. Monaghan, 306 N.Y. 312, 118 N.E.2d 452 (Ct. App. 1954). I discuss the criminal connotations involved only to point up the moral turpitude connected with some of the charges against the plaintiff.
There can be no dispute that plaintiff, as an employee of the State Highway Department, was a public officer and that his position carried with it the duties, benefits and obligations inherent therein. Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc., 31 N.J. 124 (1959). His status as a public officer carried with it an obligation and duty to comply with all reasonable rules and regulations promulgated by the New Jersey State Highway Department or its Commissioner. As a Civil Service employee he was under a similar obligation with respect to the Civil Service rules and regulations. In addition to all these specified rules and regulations, he stood in a fiduciary relationship to the public, and the law imposed upon him such duties as arise by implication from the very nature of his office. State v. Weleck, 10 N.J. 355 (1952); State v. Cohen, 32 N.J. 1 (1960). Such implied duties would be honesty and fairness toward the State and persons doing work for the State Highway Department, or its contractors and sub-contractors, in inspecting, testing and certifying work done and materials furnished. I have only given a broad general statement of *603 the inherent duties of plaintiff's position, but the language of the court in Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433 (1952), is clearly relevant and applicable, and is worthy of being quoted when one seeks to gauge a public employee's duty and obligation to the public:
"They stand in a fiduciary relationship to the people whom they have been elected or appointed to serve. * * * As fiduciaries and trustees of the public weal they are under an inescapable obligation to serve the public with the highest fidelity. In discharging the duties of their office they are required to display such intelligence and skill as they are capable of, to be diligent and conscientious, to exercise their discretion not arbitrarily but reasonably, and above all to display good faith, honesty and integrity. * * * They must be impervious to corrupting influences and they must transact their business frankly and openly in the light of public scrutiny so that the public may know and be able to judge them and their work fairly. * * *"
Without further burdening my conclusions by examining in detail the charges on which plaintiff was found guilty, suffice it to say that, considered as a whole, I cannot say that plaintiff's conduct consisted of that kind of service required of him in order to entitle him to pension benefits. On the contrary, I must conclude that he was unfaithful, disloyal, dishonest and a discredit to the State of New Jersey. Having been properly discharged from service on charges of misconduct and delinquency, he is not entitled to a pension.
While the point has not been raised or argued by either side, it seems to me that I should not by this decision foreclose such benefits as plaintiff may be entitled to under the provisions of N.J.S.A. 43:15A-41. This section of the Pension Act provides that an employee who withdraws from service, or ceases to be an employee for any cause other than death or retirement, shall receive all, or such part as he demands, of the accumulated deductions standing to the credit of his individual account in the annuity savings fund, plus regular interest. While I make no determination on this point, I want it to be understood that I am not foreclosing *604 plaintiff from using this section of the statute should he desire to do so.
The Attorney General will prepare an appropriate judgment consistent with these conclusions, have it consented to as to form by counsel for plaintiff, and submit it to me for signature and filing; otherwise it may be settled on notice.