126 N.J. Super. 517 (1974)
315 A.2d 709
COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, PLAINTIFF,
v.
UNION COUNTY WELFARE BOARD ET AL., DEFENDANTS. COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, PLAINTIFF,
v.
ESSEX COUNTY WELFARE BOARD ET AL., DEFENDANTS. ESSEX COUNTY WELFARE BOARD ET AL., PLAINTIFFS,
v.
STATE OF NEW JERSEY, DEPARTMENT OF INSTITUTIONS AND AGENCIES ET AL., DEFENDANTS. PUBLIC EMPLOYEES SUPERVISORS UNION, AFFILIATED WITH LOCAL 723, INTERNATIONAL BROTHERHOOD OF TEAMSTERS ET AL., PLAINTIFF,
v.
STATE OF NEW JERSEY, DEPARTMENT OF INSTITUTIONS AND AGENCIES ET AL., DEFENDANTS. PASSAIC COUNTY WELFARE BOARD ET AL., PLAINTIFFS,
v.
ROBERT L. CLIFFORD ET AL., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1973.
Decided February 13, 1974.
*519 Before Judges CARTON, SEIDMAN and DEMOS.
Mr. Sidney Reitman argued the cause for appellant Communications Workers of America, AFL-CIO (Messrs. Kapelsohn, Lerner, Leuchter, Reitman & Maisel, attorneys).
Mr. Howard A. Goldberger argued the cause for appellants Public Employees Supervisors Union, Affiliated with Local 723, International Brotherhood of Teamsters; Teamsters Local 97 of the New Jersey, etc., and Employees of the Passaic County Welfare Association (Messrs. Goldberger, Siegel & Finn, attorneys).
Mr. William H. Sheil argued the cause for appellant Essex County Welfare Board (Mr. Joseph E. Cohen, attorney).
Mr. Ronald A. Breslow argued the cause for appellant Passaic County Welfare Board.
Mr. Richard F. Powell, Jr. argued the cause for respondent Union County Welfare Board (Mr. Edmund J. Tucker, attorney).
Mr. Theodore A. Winard, Assistant Attorney General, argued the cause for respondents Department of Institutions and Agencies, Division of Public Welfare, and Governor's Office of Employee Relations (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. Stephen Skillman, First Assistant Attorney General, of counsel; Ms. Joan W. Murphy, Deputy Attorney General, on the brief).
*520 Mr. Joseph J. Triarsi, Assistant County Counsel, filed statement in lieu of brief on behalf of the County of Union (Mr. Ralph V. Mancini, Union County Counsel).
Mr. John J. Harper filed a brief amicus curiae on behalf of County Welfare Directors Association of New Jersey.
The opinion of the court was delivered by CARTON, P.J.A.D.
The common problem posed by these consolidated appeals is whether collective bargaining agreements made between duly certified representatives of county welfare board employees and their respective county welfare board employers are subject to approval by the Division of Public Welfare of the State Department of Institutions and Agencies (Division). Specifically challenged here are determinations of the Commissioner disapproving such agreements because they contain salary provisions which exceed state salary guidelines promulgated for welfare board employees. A basic complaint is that such action deprives the employees of the right to bargain collectively concerning wages.
The present controversies have their genesis in the welfare assistance programs established in 1936 pursuant to the Social Security Act. At that time the Department of Institutions and Agencies promulgated a document described as "Plan for Personnel Selection Applicable to all County Welfare Boards." It included standard classifications for various personnel positions, standard methods for examining and certifying candidates for positions and approving appointments to them. This plan was later promulgated as an administrative release known simply as "Ruling 11." From time to time changes to the plan have been made in the form of amendments or revisions of the ruling.
The standard compensation plan sets forth the position titles applicable to the various classifications of employees of the county welfare boards, the position title of employees of state governmental agencies whose duties are deemed comparable, *521 and the applicable salary ranges for both county and state employees. The state salary range sets a minimum and maximum salary for each position.
On August 9, 1972 the Union County Welfare Board, after collective negotiations with Communications Workers, signed a proposal extending an agreement entered into in 1970 for a two-year period from January 22, 1972 through December 1973. The 1970 agreement called for the payment by Union County of starting and maximum salaries of certain employee positions above those set forth in the state salary ranges. The proposed agreement for 1972 provided that Union's previous salary ranges would be maintained and that there would be in addition a $360 across-the-board increase. The proposed agreement also provided for an accelerated schedule of incremental steps within the salary ranges.
The Essex County Welfare Board negotiated a proposed agreement on November 21, 1972 with Communications Workers of America for the two-year period extending from January 22, 1972 to December 1973. Under the proposed agreement all employees would receive a 5.5% across-the-board increase retroactive to January 1, 1972. The agreement also provided that instead of the salary range of $8,203 to $11,073, case workers would receive a normal starting salary of $8,990 with a maximum of $12,014.
On February 1, 1973 the Passaic County Welfare Board submitted its proposed budget for approval. This budget provided for a 4.5% across-the-board, cost-of-living increase, plus one increment to be made to each employee.
By letter, the Department of Institutions and Agencies informed the respective welfare boards that the proposed agreements would be approved except for the salary provisions. Essentially the welfare boards were advised that the salary range for all positions must comply with the state range for the same or comparable positions.
Plaintiffs Communications Workers of America, AFL-CIO, Essex County Welfare Board and Public Employees Supervisors *522 Union, etc., filed complaints in the Chancery Division challenging the action of the Commissioner of the Department of Institutions and Agencies with respect to agreements made between the employees' representatives and the welfare boards of Essex and Union Counties. Named as defendants were the Commissioner, the Acting Director of the Division of Public Welfare, and the Director of the Governor's Office of Employees Relations. In another proceeding, plaintiff Passaic County Welfare Board filed an appeal to this court from the Commissioner's disapproval of the proposed agreement between the board and its employees. The Chancery Division actions were transferred to this court and consolidated with the appeal taken by the Passaic County Welfare Board.
Plaintiff Unions charge that the state agency's action interferes with the right of collective bargaining guaranteed to public employees under the New Jersey Constitution (Art. I, par. 19) and seek to enjoin such interference. The county welfare boards align themselves with the unions in opposition to the State's contention that the Commissioner of Institutions and Agencies has exclusive power under N.J.S.A. 44:7-6, the Federal Social Security Act, and federal regulations to promulgate a standard compensation plan governing the salaries to be paid welfare board employees. The County Welfare Directors Association of New Jersey has intervened as amicus curiae and filed a brief in support of the position taken by the unions and the welfare boards.
The arguments advanced by the unions and the welfare boards are syllogistic in form: public employees are guaranteed the constitutional right to organize and present their grievances through representatives of their own choosing. Under the terms of the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq., adopted to implement this constitutional guarantee, when an agreement as to the terms and conditions of employment is reached it shall be embodied in writing and signed by the authorized representative of the public employer and the employee representative, *523 N.J.S.A. 34:13A-5.3. The statute defines "public employer" to include any political subdivision of the State or any authority, commission or board, or any branch or agency of the public service, N.J.S.A. 34:13A-3(c). Since county welfare boards are corporate entities (see N.J.S.A. 44:7-7) and are authorized to appoint necessary employees (see N.J.S.A. 44:7-9) and to determine their compensation within the limits of the funds made available for that purpose, they as public employers are required to bargain collectively with employees' representatives and to enter into agreements implementing such bargaining.
The unions and the county welfare boards also point to the provisions of N.J.S.A. 44:1-27 and N.J.S.A. 44:4-35, which authorize the county welfare board to fix the salaries of officers and employees within the limitations of the appropriation made by the board of chosen freeholders. As a consequence, they argue, the Division has no right to control the rate of pay of welfare board employees and that no such right is conferred upon it by federal provisions or state statute or regulations.
The State's position is that it must have exclusive power to enforce standard salary schedules for welfare board employees by reason of its participation in the various federal welfare assistance programs. It insists that it has the power to prescribe standards with respect to salaries of welfare boards without regard to any rights of collective bargaining created by the Public Employer-Employee Relations Act. The power to prescribe salary standards stems from the statutes and regulations adopted to implement state welfare programs. The State relies upon N.J.S.A. 44:7-6 as specifically supporting its claim of statutory authority to adopt regulations designed to insure that federal aid standards are adhered to.
The initial concern, then, is whether the Legislature, in order to implement the federal assistance programs, either expressly or by necessary implication, granted authorization to the Department of Institutions and Agencies *524 to regulate the salaries of county welfare board employees, that authorization antedating the adoption of the Employer-Employee Relations Act.
Resolution of this question of statutory interpretation necessarily entails a brief review of pertinent federal statutes and regulations. The several federal welfare assistance programs here under review are extensions of and established pursuant to the Federal Social Security Act. See Old Age Assistance Program (42 U.S.C.A. § 301 et seq.), Aid to Families with Dependent Children (42 U.S.C.A. § 601 et seq.), Aid to the Blind (42 U.S.C.A. § 1201 et seq.), and Aid to the Permanently and Totally Disabled (42 U.S.C.A. § 1351 et seq.).
The Department of Health, Education and Welfare (HEW) is designated as the federal agency responsible for the overall supervision of federally funded welfare programs within the various states, 42 U.S.C.A. § 602. Among other things, HEW is directed to assure that state plans of social assistance conform to the requirements of the Social Security Act, 42 U.S.C.A. § 1316(a) (1). Submission of a state plan to HEW and approval by that agency is prerequisite to federal financial participation in state welfare programs, 42 U.S.C.A. §§ 301, 601, 1201, 1351. A "state plan" consists of all the statutes and regulations which create and provide for the administration of programs of assistance.
As a precondition for receipt of federal grants, the State is responsible for certifying to HEW that requirements of the state plan have been fulfilled in the administration of the welfare programs. See 42 U.S.C.A. §§ 602(a), 604(a), 1202(a), 1352(a).
The Social Security Act requires that a state plan must, among other things, provide that it shall be in effect in all political subdivisions of the State and, if administered by such subdivisions, be mandatory upon them; must provide for financial participation by the State; and must provide for the establishment or designation of a single state agency to administer the plan, or alternately, for the establishment *525 or designation of a single state agency to supervise the administration of the plan. 42 U.S.C.A. § 302(a) (1-5); and see 42 U.S.C.A. §§ 1202(a), 1352(a), 1396a(a) (1) et seq. See also 45 CFR 205.100(a) (2).
The same section of the Social Security Act contains the mandate that a state plan must
* * * provide (A) such methods of administration (including methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the Secretary [of HEW] shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employee in accordance with such methods) as are found by the Secretary to be necessary for the proper and efficient operation of the plan * * *. [42 U.S.C.A., § 302(a) (5) (A); emphasis supplied]
HEW has interpreted this statutory requirement to mean that a state must provide, as part of its "state plan," that
A plan of compensation for all classes of positions will be established and maintained on a current basis. The plan will include salary rates adjusted to the responsibility and difficulty of the work and will take into account the prevailing compensation for comparable positions in the recruiting areas and in other agencies of the government and other relevant factors. It will provide for salary advancement for full-time permanent employees based upon quality and length of service and for other salary adjustments. [42 CFR 70.8(a); emphasis supplied].
It is argued that the provision in the Social Security Act enjoining HEW from exercising authority concerning salary determinations confirms the unions' contention and that of the county boards that the state agency was never intended to be other than a mere conduit of federal welfare funds, and that it should have no viable role in the wage determinations of the county board. But it is not our function to reconcile the apparent incongruity between the grant of authority contained in the federal statute and the directive which purports to implement it. The regulation which HEW has promulgated pursuant to the statute and that agency's interpretation of its own regulation constitute a mandate which the state agency may not ignore.
*526 In this connection we note that the regulation is one of many years standing. As a practical matter, the state agency has no alternative to compliance with the federal regulation strictly in accordance with its terms. Otherwise the State's share of federal assistance may be jeopardized for failure of the state plan to comply with federal requirements. Hausman v. Dept. of Institutions and Agencies, 124 N.J. Super. 139 (App. Div. 1974), aff'd 64 N.J. 202 (1974).
In specifically referring to the New Jersey agency's function in administering federal public assistance programs at the county level, HEW has informed the state agency that it is responsible for all program aspects and for all funds expended, whether they originate from federal, state or local funds. Although the state agency may leave matters of local compensation to local government control, it has authority to retain control of the local compensation plans when it so elects. See 45 CFR 205.100(a) (2). HEW insists that whatever choice the State makes with respect to administering local compensation plans, the State remains responsible to the Federal Government, a relationship that the local government or political subdivision may not abrogate.
It is against this backdrop of federal legislation that we consider this State's action to implement the Federal Social Security program and the administrative procedures taken to effectuate it. The State's principal reliance in support of its claim to the right to control salaries at the local level is upon N.J.S.A. 44:7-6. This statute was adopted in 1936 shortly after the inception of the original Federal Old Age Assistance Program. Among other things, it provided:
Said division [later the Commissioner of Institutions and Agencies] shall, in co-operation and association with the Civil Service Commission, require adequate personnel standards for all county welfare boards, as county bureaus of old age assistance, in the manner following: The division shall, by appropriate rule and regulation, establish and maintain standards appropriate to a modern personnel system on a merit basis for all positions and for the application of correct business principles in the creation and abolition of positions, the classification of authorized positions on the basis *527 of the duties and responsibilities of the incumbents, the development, adoption and the administration of equitable compensation schedules for each class of positions, the selection, certification, appointment, regulation and tenure of persons holding such positions, and such other standards for a merit system of personnel administration as may lawfully be required by the Federal Social Security Board for approval of a State public-assistance plan. * * * All rules and regulations made by the State division under this chapter shall be binding upon the county welfare boards, as county bureaus of old age assistance. [Emphasis supplied]
We deem it significant that N.J.S.A. 44:7-6 is not confined to a general grant of authority designed to carry out the federal assistance program, but represents a command to establish and maintain a modern personnel system in this State on a merit basis for all positions, with the classification of such positions on the basis of the duties and responsibilities of the incumbents. The specific directive charging the Commissioner with the development, adoption and administration of equitable compensation schedules for each class of positions and such other standards for a merit system of personnel administration as may lawfully be required, evinces a clear intention that this responsibility should include the regulation of salaries of local welfare boards.
This interpretation finds strong support in the practical construction and long-term application given the regulation promulgated by the Commissioner. See In re Revision of Rates by Plainfield-Union Water Co., 57 N.J. Super. 158, 177 (App. Div. 1959). Ruling 11 and various revisions thereof have for several decades prescribed detailed salary ranges for each employment position in the county boards. The language of that regulation leaves no doubt of the agency's claimed right to control the compensation of board employees and serves as an indicium that the county boards had limited power in that area. See In re Revision of Rates by Plainfield-Union Water Co., id. The county boards have heretofore implicitly recognized the Commissioner's supervisory right by submitting salary agreements between them and their employees to the state agency for approval. Indeed, *528 the agreements involved in this case bear the caveat that they are "subject to approval" of the state agency. The fact that on a few occasions the state agency may have approved salary agreements which did not fully comply with the state guidelines does not lessen the significance of this long-continued administrative practice. The controlling feature remains that the county boards have consistently recognized the state agency's right to exercise supervisory control of board employee salaries.
We conclude, therefore, that the Commissioner was granted statutory authority to prescribe minimum and maximum salary ranges for county welfare board employees and that the power conferred upon such boards by virtue of N.J.S.A. 44:1-27 and N.J.S.A. 44:4-35 to fix and determine the salaries of its officers and employees is subject to the authority granted to the Commissioner.
This brings us to consideration of the impact of the Employer-Employee Relations Act upon the respective powers of the Commissioner and the county boards relating to salary determinations. In 1968 the Legislature adopted the Employer-Employee Relations Act, L. 1968, c. 303, which implements the right granted under Art. I, par. 19 of the New Jersey Constitution to public employees "to organize, [to present] * * * their grievances and proposals through representatives of their own choosing * * *."
Under the statute public employees are given the right to form, join and assist any employee organization, and to select representatives to conduct on their behalf "collective negotiation concerning the terms and conditions of employment * * *." N.J.S.A. 34:13A-5.3. The statute also enjoins the majority representatives of public employees and designated representatives of public employers to "meet at reasonable times and negotiate in good faith with respect to grievances and terms and conditions of employment." Id.
The rights afforded to public employees under the Constitution are of a more limited character than those available to employees in the private sector and do not extend to every *529 public employment relationship. See Lullo v. International Ass'n of Fire Fighters, 55 N.J. 409, 440 (1970). The implementing Employer-Employee Relations Act itself contains a broad reservation, to wit:
Nothing in this act shall be construed to annul or modify, or to preclude the renewal or continuation of any agreement heretofore entered into between any public employer and any employee organization, nor shall any provision hereof annul or modify any statute or statutes of this State. [N.J.S.A. 34:13A-8.1; emphasis supplied]
In interpreting this act our Supreme Court has also pointed out inherent limitations on the collective bargaining rights granted to employees:
It is crystal clear that in using the term "collective negotiations" the Legislature intended to recognize inherent limitations on the bargaining power of public employer and employee. The reservation in section 7 of the Civil Service rights of the individual employee is a specific indication of that fact. The lawmakers were sensitive that Civil Service statutes in many areas provide for competitive employment examinations, eligible lists, fixed salary lists, for promotion, transfer, reinstatement and removal, and require all employees to be dealt with on the same basis. And undoubtedly they were conscious also that public agencies, departments, etc., cannot abdicate or bargain away their continuing legislative or executive obligations or discretion. Consequently, absent some further changes in pertinent statutes public employees may not be able to make binding contractual commitments relating to certain subjects. * * * In our judgment, therefore, the authorization for "collective negotiations" in the 1968 Act was designed to make known that there are salient differences between public and private employment relations which necessarily affect the characteristics of collective bargaining in the public sector. [Lullo v. Intern. Assoc. of Fire Fighters, 55 N.J. 409, 440 (1970); citations omitted, emphasis supplied]
In Porcelli v. Titus, 108 N.J. Super. 301 (App. Div. 1969) the court recognized that the provisions of the act requiring the parties to engage in collective negotiations and to embody the products of such negotiations in a signed agreement did not oblige school boards to negotiate away their obligations and powers given them under the statute providing for the maintenance of a thorough and efficient *530 system of public education. In like vein, see, Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, 64 N.J. 17 (1973).
Our concern is to reconcile the provisions of the statutes relating to the administration of federal welfare assistance with those of the Employer-Employee Relations Act. See Englewood Bd. of Ed. v. Englewood Teachers, 64 N.J. 1, 7 (1973); Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, supra, 64 N.J. at 25. Thus, our determination that the Commissioner has authority to prescribe guidelines for the compensation to be paid board employees does not mean that local welfare boards have no function or that the board employees are without any rights afforded other public employees.
Recognition must be given to the constitutional guarantee that employees may organize and present their grievances and proposals through representatives of their own choosing. Furthermore, except to the extent that the provisions of the Employer-Employee Relations Act are inconsistent with the power granted to the Commissioner, employees of welfare boards are entitled to the same statutory benefits conferred on other employees under that act.
Thus, the county boards as public employers have the duty of negotiating in good faith with representatives of their employees concerning matters which directly affect the work and welfare of those employees. Lullo v. International Ass'n of Fire Fighters, supra, 55 N.J. at 416; Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, supra. Under the scheme envisioned by the Employer-Employee Relations Act such negotiations would ordinarily include the question of compensation, an issue which goes to the heart of labor relations. See Englewood Bd. of Ed., supra, 64 N.J. at 6-7.
The dilemma arises because the county boards, in their negotiations with their employees, are limited by the Commissioner's power to prescribe salary ranges on a statewide basis for all county board employees.
As a consequence, the complaint of the employee representatives is that their right of negotiation is an empty one because no welfare board is empowered to enter into wage *531 agreements exceeding the maximum ranges fixed by the Commissioner. They point out that, on the other hand, since the Commissioner is not technically the employer, he has no legislative mandate to negotiate with the representatives of any board's employees concerning wages and conditions of employment in a particular county which would justify departure from the state norm. Cf. Burlington Cty. Col. Fac. Ass'n v. Bd. of Trustees, 64 N.J. 10, 14 (1973).
This problem could, of course, be readily resolved by the Legislature through amendment of the statute. However, in the absence of such legislative action, we are obliged to continue to make a conscientious effort to effectuate the constitutional and legislative objective of the Employer-Employee Relations Act without frustrating the legislative goals of the welfare statutes. Cf. Dunellen Bd. of Ed., supra.
It is particularly important that we do so in the present case; otherwise employees of local welfare boards may needlessly be deprived of rights accorded under the Constitution as a matter of course to all other public employees. In this connection, the sole reason for the predicament in which the welfare board employees are placed is the vicarious circumstance that New Jersey has elected not to administer federally-assisted welfare programs at the state level and has confided such administration to the local boards. The mere fact that the State has chosen to adopt a hybrid system of administration under which it retains supervisory control, but leaves the local agency the direct responsibility for administration, should not be a reason for depriving the welfare board employees of rights which would otherwise obtain.
During the pendency of this appeal the Commissioner promulgated revised Ruling 11, dated September 20, 1973, which became effective immediately, adopting a statewide compensation schedule fixing mandatory guidelines for salaries of all county welfare board employees. The substance of the employees' grievance is that the inflexible compensation schedule thus adopted fails to give recognition to factors peculiar to certain counties and which justify different salaries *532 and rates of payment. They maintain that they have been effectively precluded from presenting their grievances or bargaining in good faith with their employers because the maximum salary ranges contained in the compensation schedules were adopted without notice or hearing.
The employees assert specifically that the regulation fails to give recognition to the difference in the cost of living in various geographical areas throughout the State, the difference in work loads in various counties, the differences in monetary resources at the disposal of certain counties, and the differences in problems of recruiting and retaining personnel experienced by some boards  particularly Essex and Union  because their salaries had fallen below those of other counties' employees who perform comparable work.
We observe that recognition of such factors in the state compensation plan is entirely consistent with the requirements in HEW's directive that such plans shall "include salary rates adjusted to the responsibility and difficulty of the work and will take into account the prevailing compensation for comparable positions in the recruiting areas and in other agencies of the government and in other factors * * *." 45 CFR 70.8.
We are persuaded that the substance of the constitutional rights guaranteed public employees can be secured to county welfare board employees in the situation before us and without any significant interference with the exercise of the Commissioner's responsibilities under the welfare program, i.e., by requiring that a hearing be conducted before the compensation schedules contained in the state plan shall become effective. Such hearing will afford the representatives of these employees an opportunity to present their grievances and to establish their claim that the compensation schedules contained in the regulation already promulgated are unreasonable or arbitrary for failure to take into consideration factors which should have received recognition.
We are not impressed by the State's objection that there is no need for hearings and findings of fact in connection with *533 the promulgation of a statewide compensation plan for county welfare board employees. The State's argument seems to be grounded upon its claim that the compensation plan promulgated by the Commissioner is tied to the more comprehensive plan developed by the Civil Service Department, and that the Commissioner used the salary ranges which were developed by the Civil Service Department only after careful evaluation of all titles and classifications based upon a report made for the State by a private consulting firm  the so-called Hay Report.
The flaw in this argument is that the Hay Report and the evaluations made pursuant to it are confined to personnel in the state service. See N.J.S.A. 52:14-17.50; and see, In re Senior Appeals, 60 N.J. 356 (1972). It may be, as the State contends, that the compensation plan developed for all such state employees was arrived at in the light of the peculiar problems of each department of State Government. However, it does not necessarily follow that a plan made for state employees adequately takes into consideration factors which may require differential treatment between the employees of the various boards.
The collective negotiation rights of public employees in state service are adequately preserved because the State, as the employer, has the duty of bargaining in good faith with their representatives. Employees of county welfare boards, on the other hand, are deprived of those rights insofar as they relate to their salaries because the Commissioner, although exercising control over such salaries, denies any obligation to negotiate with them or to give consideration to their special interests.
Our determination makes it unnecessary to consider the further argument that the action of the Governor's Office of Employees Relations infringed upon the constitutional rights of negotiation guaranteed to the county welfare board employees. Cf. Ass'n of N.J. State Col. Fac. v. Bd. of Higher Ed., 112 N.J. Super. 237 (Law Div 1970).
*534 The matter is remanded to the Commissioner for the purpose of conducting a hearing in accordance herewith and to make appropriate findings and determinations. In view of the public interest involved, the proceeding should be expedited.
We do not retain jurisdiction.