149 N.J. Super. 241 (1977)
373 A.2d 691
ESSEX COUNTY WELFARE BOARD, APPELLANT, AND MIDDLESEX COUNTY WELFARE BOARD, APPELLANT-INTERVENOR,
v.
ANN KLEIN, COMMISSIONER, NEW JERSEY DEPARTMENT OF INSTITUTIONS AND AGENCIES, AND G. THOMAS RITI, DIRECTOR, NEW JERSEY DEPARTMENT OF INSTITUTIONS AND AGENCIES, DIVISION OF WELFARE, RESPONDENT. COUNTY WELFARE DIRECTORS' ASSOCIATION OF NEW JERSEY, AN UNINCORPORATED ASSOCIATION OF NEW JERSEY, APPELLANT, AND MIDDLESEX COUNTY WELFARE BOARD, APPELLANT-INTERVENOR,
v.
STATE OF NEW JERSEY, DEPARTMENT OF INSTITUTIONS AND AGENCIES, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 1977.
Decided March 25, 1977.
*243 Before Judges FRITZ, ARD and PRESSLER.
Mr. Howard J. Pfeffer, Legal Assistant, argued the cause for appellant Essex County Welfare Board (Mr. William J. Tamburri, counsel).
Mr. Bernard H. Shihar argued the cause for appellant intervenor Middlesex County Welfare Board.
Mr. John J. Harper argued the cause for appellant County Welfare Directors' Association of New Jersey (Messrs. Harper, McCoy & O'Brien, attorneys).
*244 Mr. Richard M. Hluchan, Deputy Attorney General, argued the cause for respondents (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by PRESSLER, J.A.D.
The single question involved in these consolidated appeals is whether or not a rule promulgated by the Department of Institutions and Agencies (Department) governing the classification, compensation and other terms and conditions of employment of employees of county welfare boards may validly distinguish between county welfare board directors and deputy directors on the one hand and all other board employees on the other hand in respect of the opportunity to receive salary differentials in excess of the Department's established salary ranges.
The essential background of this controversy is set forth in Communications Workers v. Union Cty. Welfare Bd., 126 N.J. Super. 517 (App. Div. 1974), in which various unions challenged the right of the Department to establish fixed salary schedules applying uniformly throughout the State to all employees of the county welfare boards. Communications Workers sustained the power as well as the obligation of the Department to establish salary schedules of state-wide application pursuant both to N.J.S.A. 44:7-6 and the superimposed federal statutes and regulations governing a state welfare system which is at least in part federally financed. We recognized, however, in Communications Workers the right of the employees of the various county boards to seek financial recognition of special factors varying from county to county which reasonably may affect the amount of compensation  such factors as the difference in the cost of living from county to county, the consistency of the salary of welfare board employees with the salaries of other county employees in comparable positions, the differing experience and problems among the various counties in recruiting and retaining personnel, *245 and the differing monetary resources of the various counties. As we thus concluded:
* * * [R]ecognition of such factors, in the state compensation plan is entirely consistent with the requirements in HEW's directive that such plans shall "include salary rates adjusted to the responsibility and difficulty of the work and will take into account the prevailing compensation for comparable positions in the recruiting areas and in other agencies of the government and in other factors * * *. 45 CFR 70.8. [at 532]
The response of the Department to our holding in Communications Workers was, in July 1974, to amend its Ruling 11, which constitutes the aggregation of provisions controlling the terms and conditions of employment of county welfare board employees. More specifically, Part I, paragraph 5, of the Ruling was revised in order to authorize the county welfare boards to consider the
* * * granting of salary differentials and/or longevity payments which are equal to and which affect all other county employees similarly affected; provided, however, that they are based on clearly identifiable special factors pertaining to the particular county and further provided that the compensation plan requested by the county welfare boards is at least equivalent to the range included within the state compensation plan applicable to all approved titles including the adoption of an annual merit increment plan as covered below.
Such grant of salary differentials by the county boards remained, however, by the express terms of the regulation, subject to approval by the Department's Division of Public Welfare.
The state-wide salary schedules themselves, as originally promulgated as part of Ruling 11, were unaffected by the 1974 rule revision. The general plan adopted by the schedules is to identify the position in state employment comparable to each of the positions in county employment and to apply to the county position the same salary range as is applicable to the counterpart state position. There being no state position comparable to the county positions of director and deputy director, the Department retained a private consulting *246 firm to recommend salary ranges for these positions. This action resulted in the submission to the Department of the so-called Hay report. The general thesis of the report was that there should not be a single state-wide salary range for the director and deputy director positions because of the variation from county to county of the scope of their responsibilities in terms of such factors as caseloads, the size of staff to be supervised, the amount of public funds managed, and the variety of programs administered. Accordingly, the recommendation of the report was to classify the counties into five categories determined essentially by the difficulty of the job. A separate salary range was established for each category. This plan was in large measure accepted by the Department, which, however, reduced to four the number of county categories.
Shortly after the 1974 revision of Ruling 11 was adopted, appellant Essex County Welfare Board sought Department approval for its grant of a pay differential to its Director which would have resulted in his compensation exceeding the range for the county category in which Essex County had been placed. The Department declined approval on the ground that the 1974 amendment did not apply to county welfare directors and deputy directors. Other county welfare boards were also so advised despite the Department's simultaneous approval of pay differentials for other categories of county welfare board employees. After the exchange of substantial correspondence between the Department and the county boards, the Department, in November 1975 and after a public hearing, again amended the rule, expressly excluding directors and deputy directors from the pay-differential authorization. Both the Essex County Welfare Board and the County Welfare Director's Association of New Jersey[1] filed notices of appeal *247 from the order adopting the 1975 revision of the rule. These appeals were consolidated, and thereafter the Middlesex County Welfare Board was granted leave to intervene as an appellant in the consolidated appeals.
The challenge of all of the appellants is predicated on Fourteenth Amendment equal protection grounds. Their claim is that their exclusion from the pay-differential authorization of the rule is invidiously discriminatory because of the patent lack of any reasonable basis for the exclusion in terms of the general purpose and policy of the regulation in question. We agree.
It is, of course, axiomatic that a rule of an administrative agency is subject to the same canons of construction and the same constitutional imperatives as is a statute. See, e.g., Hoeganaes Corp. v. Dir. of Div. of Tax., 145 N.J. Super. 352, 359 (App. Div. 1976); In re Plainfield-Union Water Co., 57 N.J. Super. 158, 177 (App. Div. 1959). It is further axiomatic that an enactment, such as that here attacked, which establishes distinct classifications subject to distinctly different treatment, does not violate the equal protection mandate of the Fourteenth Amendment and hence does not constitute proscribed discrimination so long as there is a reasonable basis in fact for the distinction which is reasonably related to a legitimate objective of the enactment. There is, moreover, a presumption of the validity of the classification, which will be sustained if there is any reasonably conceivable factual basis therefor. David v. Vesta Co., 45 N.J. 301, 314-315 (1965); Washington National Ins. Co. v. Board of Review, 1 N.J. 545, 553 (1949).
Applying these principles and further according the Department the presumption of the reasonableness of administrative action to which it is entitled, Borland v. Bayonne Hospital, 72 N.J. 152, 158 (1977), we are nevertheless constrained to conclude that the exclusion here challenged is in fact arbitrary and unreasonable. The exclusion was initially sought to be justified by Department officials *248 on the ground that it was a reasonable labor relations technique. The explanation given was that the pay-differential authorization should not apply to the directors and deputy directors because they are part of the county welfare board's management and therefore engage in collective negotiations with the other board employees. The record is devoid of any factual support for that thesis and we do not assume that the directors are either necessarily or actually part of the employer's negotiation team. But even if that were so, we fail to perceive how that circumstance would reasonably relate to the underlying purpose of the pay-differential authorization, which is patently to enable the county welfare board to recruit and retain competent personnel by being able to offer salary parity vis-a-vis other employees of that county who have essentially comparable positions, and by being able, furthermore, to reflect in compensation localized cost of living factors. That that is indeed the purpose of the special-factor differential is evident from the language of the ruling which authorizes salary differentials "equal to and which affect all other county employees similarly affected," provided they are "based only on clearly identifiable special factors pertaining to the particular county."
While the Department has abandoned the "negotiation-team" rationale on this appeal, we find the justification now offered by it equally unrelated to the essential purpose of the special-factor pay differential as we understand it. The argument now made is that the four-county categorization underlying the Hay report is based on a "built-in," as it were, special-factor consideration. Thus, it argues, the fact that the salary range for directors and deputy directors is not uniform throughout the State but is rather dependent upon the four-level scale of job difficulty indicates that the pertinent special factors have already been taken into account. The flaw in that argument, however, is that the special-factor considerations to which the Rule is addressed are not essentially employment-duty related. *249 Considerations relevant to the job description itself have already been taken into account in the fixing of the basic salary range. The differential is based upon purely local economic and other collateral considerations varying from individual county to individual county. The Hay report is based on groups of counties similarly situated in terms of job responsibility. The grouping is not based upon their similarity in terms of the special-factor considerations underlying the differential rule.
Since the Department suggests no other reasonable basis for the exclusion and since we are also unable to conceive of any, we are persuaded that the appellants here have borne their burden of proof as to the arbitrariness of the exclusion and, hence, the denial of equal protection to the class disparately treated, namely, the county welfare board directors and deputy directors.
The 1975 revision of Ruling 11, Part I, paragraph 5, expressly excluding directors and deputy directors is invalid. The county welfare boards may seek authorization for the grant of pay differentials for these employees, and the Department shall consider authorization requests in accordance with the same standards upon which it relies in evaluating all other pay-differential requests.
NOTES
[1] The standing of the Association is not here challenged, and we are satisfied that it has the necessary interest to warrant its participation as a party. Crescent Pk. Tenants Ass'n v. Realty Eq. Corp. of N.Y., 58 N.J. 98 (1971).