ERICA A. COHEN, PETITIONER–APPELLANT, v. EMERSON BOARD OF EDUCATION, RESPONDENT–CROSS–APPELLANT, v. SUZANNE CARTER, INTERVENOR–CROSS–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 2, 1988—Decided May 31, 1988.

Before Judges DREIER and BAIME.

*Stephen B. Hunter* argued the cause for appellant (*Klausner, Hunter & Oxfeld*, attorneys; *Stephen B. Hunter*, of counsel and on the brief).

*Irving C. Evers* argued the cause for Respondent–Cross–Appellant (*Schwartz, Pisano, Simon & Edelstein*, attorneys; *Irving C. Evers*, of counsel and on the brief).

*Alfred F. Maurice* argued the cause for Intervenor–Cross–Appellant (*Alfred F. Maurice*, on the brief).

*W. Cary Edwards*, Attorney General of New Jersey, attorney for the State Board of Education (*Marlene Zuberman*, Deputy Attorney General, on the statement).

The opinion of the court was delivered by

DREIER, J.A.D.

Petitioner, Erica A. Cohen, has appealed from a decision of the State Board of Education determining that intervenor, Suzanne Carter, held seniority over petitioner in the position of secondary school speech correctionist in the respondent Emerson Board of Education school district. Carter and the school district have cross-appealed from certain seniority determinations in the event the particular points urged by petitioner result in a significant correction of her seniority.

Petitioner was reduced from a half-time elementary speech correctionist position to a .3 week elementary position. At the same time the Board retained Carter in a .6 week secondary position. (Each .1 week position represents a half day per week employment in the district). As will be explained, this appeal illustrates the hypertechnical distinctions made in the interpretation of the State Board of Education's seniority standards. *See N.J.A.C.* 6:3–1.10. Particularly implicated in this case are the separate seniority lists maintained for elementary and secondary positions. *See N.J.A.C.* 6:3–1.10(1) 15 and 16. The interpretation is made more difficult by regulations recognizing "district-wide" experience which effects seniority in both the

elementary and secondary categories. *N.J.A.C.* 6:3–1.10(1)15iv and 16iii. Also implicated in this case is the State Board's extrapolation to non-classroom teachers of the regulation granting secondary school seniority to seventh and eighth grade teachers in departmentalized schools.[1] Thus an anomalous result is reached in measuring seniority for a speech correctionist or other non-classroom teacher to whom students are sent for individualized instruction. Although the job is identical in a K–8 school with or without a departmentalized seventh and eighth grade, the speech correctionist in a school with departmentalization achieves the "district-wide" seniority entitling the teacher to possible job preference over a speech correctionist whose entire experience is in a high school with 9th through 12th grade students; a speech correctionist receives no such seniority for services performed in a non-departmentalized school.

In the case before us the two teachers have practically identical seniority histories.[2] Intervenor Carter had an undisputed total seniority credit, multiplying the portions of a year served by the portion of full-time employment in each year, of 3.085 years for the period January 21, 1980 through the end of the 1984 school year.[3] The State Board computed petitioner's seniority in the secondary category at 3.07 years, raised from

---

[1]Departmentalized K–8 schools are those where the seventh and eighth grade students pass from class to class and the teachers teach specific subjects in the same manner as high school teachers. In those seventh and eighth grades in a K–8 system where the teachers maintain the class for all subjects, the teacher achieves only elementary school seniority.

[2]We were informed at oral argument that prior relevant experience interrupted by a period of non-employment is not counted and that Carter in fact had many years of prior experience, but had resigned a position in the interim. We assume that this prior service was not within the district, since *N.J.A.C.* 6:3–1.10(c) apparently requires that full recognition be given for all previous years of service within the district.

[3]The only dispute concerning Carter's service might involve the January 21, 1980 through June 1980 full-time service which was computed at 53.5% of the

the originally-determined 2.988 years by the local board. Petitioner's service was entirely "district-wide" from February 1, 1981 through June 30, 1985, by virtue of her work with seventh and eighth grade students as part of a K–8 assignment. Petitioner contends that periods of additional service should have been included.

The Administrative Law Judge determined that petitioner acquired seniority, and therefore her hours could not be reduced to fewer than those offered to Carter for the 1984–1985 school year. In reviewing this decision, the Commissioner disagreed with some of the computations of petitioner's seniority, but agreed that her seniority exceeded that of Carter, entitling petitioner to back pay and a correction of her seniority record. On cross-appeals to the State Board of Education, the State Board reversed the Commissioner's decision finding the totals noted earlier. On this appeal petitioner first argues that her prior vested seniority rights, before an amendment of the State Board's regulations in September 1983, required that she be given a district-wide credit even for her earlier elementary school service.

## I

Under *N.J.S.A.* 18A:29–9, a local board may for reason of economy or for other good cause reduce the number of positions available. Reductions in force must be made on the basis of seniority, *N.J.S.A.* 18A:282–10; and the Commissioner is given authority to establish the standards for determining seniority. *N.J.S.A.* 18A:28–13. The regulation discussed earlier constitutes the Commissioner's exercise of this power. Petitioner in effect argues that because she had undergone a reduction-in-force which shortened her hours during a period when former regulations were in effect, any seniority she then had vested must now be credited to her. Formerly, seniority

---

year. This had been rounded in the Board's calculations to 53%. But, as noted later, the 5/1000th of a year might have been relevant.

was based upon certification in a particular area, not upon actual service. Since petitioner was certified in both the elementary and secondary categories of speech correctionist, she contends that she had district-wide (elementary and secondary) seniority.

To answer this argument it is enough to say that petitioner has not lost any seniority. Under the new regulations it is merely placed within the categories of actual service. This interpretation of the Commissioner's statutory mandate, applicable to all seniority questions determined after the operative date of the amended rules, cannot be said to be arbitrary or capricious and appears to be a reasonable exercise of administrative rulemaking power. *See Hill v. Bd. of Ed., West Orange*, 1985 *S.L.D.* —— (Commissioner, January 16, 1985), aff'd by St. Bd. of Ed., 1985 *S.L.D.* —— (May 1, 1985), aff'd App.Div. 1986 (A–4355–84T1), certif. den. 104 *N.J.* 443 (1986); *contra Felper v. Bd. of Ed.*, 1985 *S.L.D.* —— (Commissioner, January 28, 1985).[4] In the case before us, the State Board of Education firmly endorsed the *Hill* decision and rejected petitioner's arguments. *Felper* was expressly overruled. We find no basis to depart from the Board's decision in this regard.

## II

■ Petitioner next claims that she was entitled to seniority credits not only for nine unused sick days that were applied to

---

[4]*N.J.A.C.* 6:3–1.10(m), which was replaced with the current subsection (m) effective August 5, 1985, contained a transition provision stating that the regulations were to "apply prospectively to all future seniority determinations as of the operative date of this rule, September 1, 1983." This original regulation was in accordance with the usual rule of construction that regulations are given prospective effect, absent clear language to the contrary. *Gibbons v. Gibbons*, 86 *N.J.* 515, 521–523 (1981) (as to statutes); *Essex Cty. Welfare Bd. v. Klein*, 149 *N.J.Super.* 241, 247 (App.Div.1977) (equating administrative regulations with statutes for construction purposes). Although the issue is not actually reached in *Bednar v. Westwood Bd. of Educ.*, 221 *N.J.Super.* 239, 241 n. 1 (App.Div.1987), the effectiveness of the "actual experience" seniority rules was assumed.

her 1980–1981 maternity leave, but also to an additional 30 days' credit. Respondent contends that petitioner was not entitled to the nine days of sick leave, but we find no basis for that conclusion. Sick days may be applied to a maternity leave, and there is no question that petitioner had been employed in the preceding school year and indicated that she intended to return after her maternity leave. The fact that the sick days were applied to the initial nine days of the term was based on the happenstance of the time of her pregnancy. Had the leave been from October through February rather than September through January there could have been no such argument. It certainly would have been more disruptive to the system for petitioner to have taught for a day or a week in September and then taken her sick leave and the balance of her maternity leave.

### III

The 30–day unpaid absence credit, however, presents a more difficult problem. *N.J.A.C.* 6:3–1.10(b) provides, in part:

[P]eriods of unpaid absences not exceeding 30 calendar days aggregate in one academic or calendar year ... shall be credited toward seniority. All other unpaid absences or leaves of absence shall not receive seniority credit.

The State Board interprets this provision as permitting 30 days of unpaid absences to be counted towards seniority; but if 31 days are taken during the school or calendar year, the entire 31–day period is then excluded. We deem this interpretation to be arbitrary. The rule by its terms applies whether the period in excess of 30 days is taken in nine intervals of three days and one of four or one period of thirty-one days.[5] The State Board,

---

[5]Thus if an ill teacher who has exceeded his or her sick leave needs an additional month to recuperate and takes the month of April, the additional unpaid sick leave would not affect seniority credits. Yet if the teacher took the month of May, a full 31 days would be deducted. Since calendar days are mentioned, intervening weekends or holidays would be included. Therefore, if one teacher missed 10 Tuesday through Thursday sessions, there would be no

agreeing with the Administrative Law Judge but disagreeing with the Commissioner, stated:

Such interpretation is consistent with the purpose of the seniority system to insure equitable determinations on the basis of actual service, and we find that to broaden the exception provided by *N.J.A.C.* 6:3–1.10(b) would undermine that purpose.

We accept the State Board's statement of purpose: "equitable determinations on the basis of actual service." This purpose, however, is not implemented by the Board's interpretation. If the Board were to measure two employees' service, one who had 31 days of unpaid leave in a year and another 30 days, the employee with 30 days would be given a full year's credit, while the employee with 31 days would be given approximately .9 years (if a 10–month contract) or .917 years (if a 12–month contract); the actual work days lost would be computed. The difference in the two employees' actual service would have been but one day, yet their records would not accurately reflect this difference. This conclusion would violate the Board's articulated standard of "equitable determination" based upon "active service." If the Board has determined that 30 days' aggregate leave within a year is sufficiently inconsequential not to affect an employee's seniority rights, then the rule should be equitably applied to those who have taken more or less than that period.

Applying this determination to petitioner's case, she should have received, as she did, the first nine days of the academic year as paid leave, applying the balance of her accumulated sick pay. The next 30 days would have been properly credited to seniority, but unpaid, and the remainder of the maternity leave would properly have been deducted from petitioner's seniority credits. We therefore agree with the Commissioner's interpretation of the regulations and determine that petitioner was

deduction, but another, who missed a 31–day month with but 21 to 23 workdays, would be docked a full 31 days of seniority credit.

entitled to the additional 30 days credit. Before the Commissioner, petitioner argued that this credit for additional work days would result in .05 year's seniority credit for the period September 24th to October 24th, 1980, and the computation was adopted by the Commissioner.

## IV

The next disputed period is 1978–1979 during which petitioner worked in a .5 week (2½ day) position in the public elementary school and a .3 week (1½ days) with students from the Assumption School, a parochial school serving grades K–8 within respondent's district. Here petitioner argues that the State Board's calculation of her seniority at .72 for that year, by virtue of the late start of the parochial school, should be changed to .80. Respondent argues that petitioner should not be entitled to any credit for the work performed for the parochial school students, and thus no secondary school credit should be given. We agree with respondent's position.

The Administrative Law Judge had ruled that petitioner be credited with a full year's service at her .3 position at Assumption, since it was mere "happenstance" that the academic year was shorter at the parochial than at the public school.[6] The Commissioner refused to allow any credit for petitioner's service at Assumption, finding it to be an extracurricular assignment.

There is no question that petitioner was not a teacher at the Assumption School, but rather remained an employee of the local district. Her assignment to work with Assumption School students was a part of her public school employment. The State Board further ruled that until the commencement of

---

[6]The Assumption school year commenced September 25th, while the public school year commenced September 6th.

Assumption's school year, she worked solely in the elementary schools of the district. However, once the Assumption School students were included within her workload, and since the Assumption School was departmentally organized,[7] petitioner received district-wide seniority even for her public school work for the balance of the year, entitling her to the .72 credit, .46 for the balance of the public school term and .26 for the parochial school.

We cannot agree with the conclusions of the State Board, since it is apparent to us that for the school year petitioner worked as an elementary school speech correctionist. The service of providing speech correction services to parochial school students was not violative of *Aguilar v. Felton*, 473 *U.S.* 402, 105 *S.Ct.* 3232, 87 *L.Ed.*2d 290 (1985). Only initial screening of students was done on the parochial school premises. After that the actual therapy was conducted at the public schools in groups consisting of both public and parochial school pupils. The service was specifically authorized by State law. *See N.J.S.A.* 18A:46–19.4 and 5. It is clear to us that since a statute requires that these services not "be provided in a church or sectarian school," *N.J.S.A.* 18A:46–19.5, and by regulation the pupils "may be grouped for speech correction," *N.J.A.C.* 6:28–6.3(h), the classification of the services should not be based upon the parochial school from which the students were drawn, but rather upon the school in which the teacher was located and in which the services were rendered, here a non-departmentalized elementary school.

As noted at the outset, the State Board of Education's policy of classifying a non-classroom teacher who provides services exclusively to K–8 pupils on the basis of whether other teachers

---

[7]The sole evidence of such organization is a single statement by petitioner that: "They were departmentalized because I had conferences with the individual Brothers in terms of specific students."

in the school are teaching single subjects as opposed to multiple subjects strains the reasoning process. Any attack on this broad classification is not now before us. However, we can certainly state that a teacher's service in the public school should not accrue secondary seniority credits in a situation where the teacher provides statutorily-mandated services in a public school to sixth, seventh and eighth grade parochial students who are added to students from a public school clearly within the elementary category. That outcome does not depend on whether the parochial school is departmentalized in the same way as equivalent departmentalized public schools. A contrary interpretation of the regulations is patently unreasonable.

Looking at the adjustments just treated, petitioner would gain .5 years credit for the maternity leave, but lose .72 years for the 1978–1979 year. Since with these adjustments it is clear that the Board's determination of Carter's seniority must be affirmed, we need not reach her or the local board's arguments that other deductions should be made to petitioner's seniority or additions made to Carter's.[8]

The decision of the State Board of Education is affirmed.

---

[8]We note, however, that there were arithmetic errors. For instance, the State Board used .03 to represent the nine-day credit; this should have been .05 (9/180). Petitioner contends that this difference when added to the 3.07 credit initially found would raise her credit to be equal to or greater than Carter's. However, as the State Board noted it had limited its consideration to two decimal places, and as we noted at the outset, Carter's initial year's credit was .535, if carried to the third decimal place. Therefore Carter would have still prevailed by .004 years (3.085 versus 3.081). Even if the credits were rounded and were equal, the Board's choice of Carter who had far more actual secondary school service would be eminently sustainable, since petitioner could not oust Carter by virtue of superior seniority. In any event, with our further adjustments as noted herein, the issue of third decimal point balancing is moot as Carter clearly had seniority at the secondary level.