711 A.2d 904

MARILYN VICENZINO, PETITIONER/RESPONDENT, v.
BEDMINSTER TOWNSHIP BOARD OF EDUCATION,
RESPONDENT/APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 5, 1998—Decided June 1, 1998.

Before Judges PRESSLER, WALLACE and CARCHMAN.

*Edward J. Glynn*, argued the cause for appellant (*Broscious, Glynn & Gentile*, attorneys; *James W. Broscious*, on the brief).

*Stephen B. Hunter*, argued the cause for respondent Bedminster Township Board of Education (*Klausner & Hunter*, attorneys; *Mr. Hunter*, of counsel and on the brief).

*Peter Verniero*, Attorney General, attorney for respondent State Board of Education (*Geraldine Callahan*, Deputy Attorney General, filed a statement in lieu of brief).

The opinion of the court was delivered by

WALLACE, J.A.D.

Bedminster Township Board of Education (Bedminster Board) appeals from a final decision of the State Board of Education which affirmed the action of the Commissioner of Education in directing Bedminster Board to reinstate petitioner Marilyn Vicenzino to her school social worker position. The Bedminster Board contends that: (1) pursuant to *N.J.S.A.* 18A:28–9 it rightfully eliminated petitioner's position; and (2) *N.J.S.A.* 18A:46–14; 18A:46–19.7, and *N.J.A.C.* 6:28–7.1(a) permit the provision of Child Study Services through the County Educational Services Commission. We find no merit in these arguments and affirm essentially for the reasons expressed by the Administrative Law Judge (ALJ) in his written decision of December 19, 1996. We hold that where a school district elects to maintain its own Child Study Team (CST), the school social worker must be an employee of the district.

Petitioner was employed as a part-time school social worker and had acquired tenure in that position by the Bedminster Board. She was assigned to the district's CST where she participated in making preliminary determinations as to the necessity of a full evaluation of children identified as potentially educationally handicapped. Petitioner had various duties as a social worker and was the case manager for fourteen students.

In March 1996, the Board determined that it could effectuate considerable savings by eliminating petitioner's position and contracting with the Hunterdon County Educational Services Commission (ESC) to provide social case histories for the students. In addition, the case management services provided by petitioner would be reassigned to the CST Director. The Board decided that the approximately fifteen case histories anticipated for new referrals to the CST could be handled by the ESC at a cost of $300 per social history. Petitioner's annual salary was $19,380. As a result of this move, the Board anticipated it would save approximately $15,000.

The Board voted in favor of the elimination of petitioner's position at its meeting on March 21, 1996, and advised petitioner she was to be terminated. Petitioner filed an appeal with the Commissioner of Education, claiming that the Board's action was contrary to decisional law and violated her tenure, seniority, and re-employment rights. The Board filed its answer and separate defense. The matter was then referred to the Office of Administrative Law.

The Board moved to dismiss the appeal for failure to state a cause of action for which relief may be granted, and petitioner filed a cross motion for summary decision. The ALJ ruled in favor of the petitioner, concluding that where a district chooses to maintain its own CST, the social worker, the school psychologist, and the learning disability teacher consultant must be employees of the district and cannot be outside contractors. Consequently, the ALJ decided that the Board's action violated regulations and ordered petitioner's reinstatement. The Commissioner and State

Board of Education affirmed the ALJ's initial decision. This appeal followed.

Initially, we note that our review is limited. "[W]e will not reverse the determination of an administrative agency unless it is arbitrary, capricious, or unreasonable or is not supported by substantial credible evidence in the record as a whole." *Dennery v. Board of Educ.*, 131 *N.J.* 626, 641, 622 *A.*2d 858 (1993)(citing *Henry v. Rahway State Prison*, 81 *N.J.* 571, 580, 410 *A.*2d 686 (1980)). To be sure, the same standard applies "to resolve disputes arising under school laws." *Impey v. Board of Educ.*, 142 *N.J.* 388, 397, 662 *A.*2d 960 (1995). Moreover, we are mindful of the deference that courts must accord agency action that purports to effectuate statutory and regulatory authority. *Brady v. Department of Personnel*, 149 *N.J.* 244, 256, 693 *A.*2d 466 (1997).

The essential question is whether a local board of education may lawfully eliminate one position of the CST and contract with an outside contractor to provide those services while choosing to maintain the other two basic CST positions. The Board argues that *N.J.S.A.* 18A:28–9 is authority for the elimination of petitioner's position. We consider the Board's contention in light of the complex applicable statutes and regulations.

The Legislature has authorized the elimination of teaching positions for reasons of economy and efficiency. *N.J.S.A.* 18A:28–9 provides:

> Nothing in this title or any other law relating to tenure of service shall be held to limit the right of any board of education to reduce the number of teaching staff members, employed in the district, whenever, in the judgment of the board, it is advisable to abolish any such positions for reason of economy or because of reduction in the number of pupils or of change in the administrative or supervisory organization of the district or for other good cause upon compliance with the provisions of this article.

> [*N.J.S.A.* 18A:28–9.]

The Board contends that it fully complied with *N.J.S.A.* 18A:28–9 when it terminated petitioner for reasons of economy. Petitioner contends that as a member of the CST, the Board may not

solely eliminate her position and contract with the ESC to perform the services she would otherwise perform.

Each board of education is charged with the responsibility to "provide suitable facilities and programs of education" for all handicapped children under *N.J.S.A.* 18A:46–13. Consistent with this requirement, each board of education has a responsibility, separately or jointly, to provide for basic child study team services and the "team shall consist of a school psychologist, a learning disability consultant and a school social worker." *N.J.S.A.* 18A:46–5.1. The regulations implementing this statute require that members of the CST be employees of the district. *N.J.A.C.* 6:28–3.1.

In construing a statute, a court must first look at the wording of the statute to ascertain its plain meaning and intent. *Kimmelman v. Henkels & McCoy, Inc.*, 108 *N.J.* 123, 128, 527 *A.*2d 1368 (1987). The language of a statute is to be given its ordinary meaning, absent a legislative intent to the contrary. *Merin v. Maglaki*, 126 *N.J.* 430, 434, 599 *A.*2d 1256 (1992). If a statute's language is "plain and clearly reveals the meaning of the statute, the court's sole function is to enforce the statute in accordance with those terms." *Department of Law & Public Safety v. Bigham*, 119 *N.J.* 646, 651, 575 *A.*2d 868 (1990). Where there are several statutes to be addressed, "[s]tatutes in *pari materia* are to be construed together when helpful in resolving doubts or uncertainties and the ascertainment of legislative intent." *Superior Air Prods. Co. v. NL Indus., Inc.*, 216 *N.J.Super.* 46, 64, 522 *A.*2d 1025 (App.Div.1987) (citations omitted). Moreover, it is well established that in interpreting statutes, courts should give deference to the interpretation of the statutes by the agency charged with the responsibility of implementing those statutes. *Merin, supra*, 126 *N.J.* at 436–37, 599 *A.*2d 1256.

Similarly, "a rule of an administrative agency is subject to the same canons of construction and the same constitutional imperatives as is a statute." *Essex County Welfare Bd. v. Klein*, 149 *N.J.Super.* 241, 247, 373 *A.*2d 691 (App.Div.1977). There is a

presumption of the validity of the regulation which "will be sustained if there is any reasonably conceivable factual basis therefor." *Ibid.* Here, neither party challenges the validity of the regulation which requires members of the CST to be employed by the district.

Applying these principles along with the required standard of review to administration proceedings, we are satisfied that the administrative decisions here must be sustained. To be sure, we have consistently recognized the authority of local boards to reduce the size of teaching staff for economic reasons. *See Impey, supra,* 142 *N.J.* at 396, 662 *A.*2d 960; *see also Jamison v. Morris School Dist.,* 198 *N.J.Super.* 411, 415, 487 *A.*2d 739 (App.Div.1985); *Klinger v. Board of Educ.,* 190 *N.J.Super.* 354, 357, 463 *A.*2d 948 (App.Div.1982), *certif. denied,* 93 *N.J.* 277, 460 *A.*2d 678 (1983); *In re Maywood Bd. of Educ.,* 168 *N.J.Super.* 45, 55, 401 *A.*2d 711, *certif. denied,* 81 *N.J.* 292, 405 *A.*2d 836 (1979).

In *Impey, supra,* the local board abolished the position of speech correctionist as a cost savings move and contracted with the county educational services commission for speech corrective services for its pupils. *Impey, supra,* 142 *N.J.* at 390, 662 *A.*2d 960. On appeal, the ALJ, Commissioner and State Board all agreed the speech correctionist was not a member of the basic child study team referred to in *N.J.A.C.* 6:28–3.1 and that the local board acted within its statutory authority. *Impey, supra,* 142 *N.J.* at 395, 662 *A.*2d 960. We affirmed. The Supreme Court affirmed, noting that the Board acted in good faith and complied with *N.J.S.A.* 18A:28–9 in reducing the number of employees for reasons of economy. *Id.* at 400, 662 *A.*2d 960.

The Bedminster Board argues that *Impey* supports its decision to terminate petitioner's position as a member of CST. We disagree. The petitioner in *Impey* argued that *N.J.A.C.* 6:28–3.1 requires that the members of the child study team be employed by the district. *Id.* at 395, 662 *A.*2d 960. She claimed that as a speech therapist and a member of the child study team, her removal and replacement by non-district personnel violated

*N.J.A.C.* 6:28–3.1. *Impey, supra,* 142 *N.J.* at 395, 662 *A.*2d 960. The Court did not address this issue because "the ALJ, Commissioner, and State Board of Education determined that petitioner ... was not a member of the basic child study team referred to in *N.J.A.C.* 6:28–3.1; *cf. N.J.S.A.* 18A:46–5.1 (omitting speech correctionists from definition of 'basic child study team')." *Ibid.* Thus, the Supreme Court was not required to address the issue we face here.

In concluding that the Bedminster Board could not terminate a member of the basic child study team and use outside services to replace petitioner, the ALJ relied on the prior administrative decision in *Elson v. Hudson County Area Vocational–Technical Schs. Bd. of Educ.,* 96 *N.J.A.R.*2d (EDU) 229 (1995). Thus, the ALJ here explained:

Under the provisions of the statute which both mandates the maintenance and the composition of CST's, a board of education is not required to employ its own CST, but may provide for CST services in a multi-district arrangement so long as identifiable apportionment of time and responsibilities to the districts involved is provided. However, where a board has provided its own CST, and then seeks to change the arrangements for the provision of such services, examination of the several decisions discussed herein demonstrates that the particular facts of each case have played a significant role in the conclusions reached as to legality of the modifications. Factors which appear to be important may include such matters as whether the termination of the petitioner and the abolition of the petitioner's position eliminated all of the persons in the district filling that position, or whether the district continues to employ a full basic CST even after the RIF, or whether the abolition is of all positions on the basic team and the contract entered into provides for all CST services to be performed by employees of a board of education operating for a multi-district group, or only of one of the basic positions with the other two positions continuing to be filled by employees of the individual board which abolished the position (as in the present matter), or whether the contract services were with a public entity such as a multi-district cooperative or ESC or with a private group, and whether the extent of the work performed by the outside contractor is minimal or involves significant amounts of work. In the present matter, the certification of Ms. Vicenzino indicates that she was the sole social worker employed by the district, and it appears that all of the needed social histories which she prepared as a portion of her CST work were contracted out and that none would be performed by a board employee, as the CST-related social histories which the ESC contractor is to perform constitute all of the social histories anticipated for the district's special education needs for the coming year. The contract was awarded to an ESC.

. . .

> While it is quite conceivable that *Impey's* support for legitimate, good faith economic based decisions involving the abolition of positions and the contracting of work with the expectation of savings could be extended to permit such actions in regard to the members of the basic CST, as the regulations now stand, in those instances where a district chooses to maintain its own CST the school social worker, the school psychologist and the LDTC must be employees of the district and cannot be outside contractors.

(internal references omitted).

We concur with the ALJ's conclusions. The local board of education is required to provide special educational services for handicapped pupils. *N.J.S.A.* 18A:46–5. The basic CST "shall consists of a school psychologist, a learning disability teacher and a school social worker." *N.J.S.A.* 18A:46–5.1. The board of education is authorized to undertake programs "separately or jointly with one or more boards of education or State agencies [to] provide for basic child study team services." *N.J.S.A.* 18A:46–5.1. The regulations of the Commissioner and the State Board of Education implementing the statutory authority for a CST expressly provide that "all members of the [CST] shall be employees of a district board of education ..." *N.J.A.C.* 6:28–3.1(b). Further, approved clinics and agencies may be used by the board of education to supplement existing services in defined areas. *N.J.A.C.* 6:28–5.1(c).

Interpreting these requirements in *pari materia* with a district board of education's authority to eliminate a position for economic reasons, under *N.J.S.A.* 18A:28–9, we conclude that where a board establishes a CST with employees of the district, the board may not eliminate one of those positions and contract out for those services. To be sure, if the Board were in good faith to eliminate the CST for reasons of economy and instead, "join with one or more boards of education or State agencies [to] provide for basic [CST] services," under *N.J.S.A.* 18A:46–5.1, that would be an appropriate decision to make. In that event, the board of education would have complied with *N.J.S.A.* 18A:46–5.1 and *N.J.S.A.* 18A:28–9.

However, so long as the board elects to maintain its own CST, consistent with *N.J.A.C.* 6:28–3.1(b), each basic member, consisting of psychologists, learning disability specialists, and social workers, "shall be employees of a district board of education." Consequently, the board's decision to abolish petitioner's social worker position while maintaining the CST and contracting outside to replace petitioner's position, did not comply with *N.J.A.C.* 6:28–3.1.

We affirm substantially for the reasons set forth in the ALJ's initial decision of December 19, 1996.