ALBERT C. D'ALOIA, JOSEPH F. McCRUDDEN, FRANK A. KEANE, JOSEPH A. O'BRIEN, ELLEN EAGEN AND JOHN J. WALSH, RELATORS, v. CIVIL SERVICE COMMISSION OF NEW JERSEY AND EDWARD H. WRIGHT, RESPONDENTS.

Argued October 9, 1924—Decided May 13, 1925.

1. The provisions of the Practice act of 1912 do not apply to *mandamus* proceedings.
2. The holders of separate claims for salary as employes of a municipality cannot bring a joint *mandamus* proceeding against the civil service commission to require a certification of their several salaries.
3. Supplement to Civil Service act (*Pamph. L.* 1918, *p.* 158) does not fasten irrevocably on any municipality the standardization scheme regulations and wage scale which may be suggested to it by the civil service commission, and which it may have adopted,. but the municipality retains the right to discard any such scheme, in whole or part, at its discretion.

---

On demurrer to return to writ of alternative *mandamus.*

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KATZENBACH.

For the relators, *Ernest L. Quackenbush.*

For the respondents, *Edward L. Katzenbach,* attorney-general.

The opinion of the court was delivered by

PARKER, J.   Six separate holders of six separate positions under the city government of Newark have joined in this *mandamus* proceeding to require the civil service commission to certify their respective salaries at certain respective amounts.

This joinder of separate claims in one proceeding we deem to be altogether irregular.   This view was intimated by this court a few years ago in *Stretch* v. *State Board of Medical Examiners,* 88 *N. J. L.* 92 (at *p.* 97), where we pointed out that the Practice act of 1912 does not apply to *mandamus* proceedings, so that while, if they were suing at law for their respective salaries, the circumstances might permit a joinder of these suits under section 4 of that act, there is no warrant of law for joinder in a *mandamus* proceeding.   26 *Cyc.* 408, 409, especially note 54.   It follows that there should be a separate writ and separate record for each prosecutor.

But the case has already been considered by this court on rule to show cause why a writ should not issue, and decision on the merits should not be longer delayed, especially as the facts are not disputed.

The determinative question arises under chapter 54 of the laws of 1918 (*Pamph. L., p.* 158), and, in brief, is whether by that act the civil service commission is vested with power to fix standards of compensation for holders of offices, positions and employments under the municipal governments which shall be binding on those governments.   As the provisions of chapter 54 are not lengthy, and cannot well be abstracted or epitomized, sections 1 and 2 of the act, which is

a supplement to the Civil Service act of 1908 (*Comp. Stat., p.* 3795), are here inserted at length:

"1. In addition to the powers enumerated in the act of which this act is a supplement, and the various acts supplemented thereto and amendatory thereof, the state civil service commission shall have the power, and it shall be its duty, to prepare classifications and suggest standards of salaries or wages to be paid officers and employes filling offices, positions and employments in the classified civil service of the several counties and municipalities which have adopted the provisions of the Civil Service act. Such classification and salary standardization shall provide definite specifications and standards of services, grades, duties, qualifications, titles and definite regulations governing increases of compensation or rates of wages based upon length of service, meritorious action and efficiency, lines of promotion through the different grades of each of the services and other matters which will aid the separate governments in establishing uniformity and modern business methods in public employment and to further strengthen and simplify civil service administration throughout the state.

"2. It shall be the duty of all officers and employes of the counties and municipalities which have adopted the provisions of the State Civil Service act to conform to and comply with all requests made by the state civil service commission for information relative to the duties, qualifications, character of work, hours of service and compensation or rates of wages of the various grades of offices, positions and employment in their respective departments, boards, commissions and institutions in order to enable the state civil commission to make and establish such standardization and classification."

The city of Newark having adopted the Civil Service act, the commission, conformably to the above supplement, prepared a plan of classification and standardization, and "suggested" the scale of salaries to the city commissioners, who, on September 20th, 1920, passed a resolution adopting the classification and the maximum and minimum wage scales,

and regulations governing procedure in that regard, with the proviso that such adoption should not be construed to nullify or abolish any office, position or employment, or alter or affect the rights or status of the incumbents, nor alter or affect the salaries of then present incumbents. The present relators are holders of positions whose emoluments are affected by the standardization plan and resolution of September, 1920. The plan was adhered to by the city until August 15th, 1923, on which date the board of commissioners passed a resolution reciting in a preamble that they felt that the responsibility (of fixing and regulating compensation of city employes) was placed upon them, and, accordingly, rescinded that part of the resolution of September, 1920, which reads: "Resolved that the regulations proposed in the said report governing procedure in the administration of a classification plan be and the same are hereby adopted." This does not seem to strike directly at the salary scale, but on October 16th, 1923, the board passed a resolution, the purport of which was to increase the salaries of the six relators, and others, to figures in excess of the *maxima* stated in the standardization plan. The district commissioner seems to have recognized the increase until December 31st, 1923, but since that date has refused to certify at the increased figures, and this litigation is the result.

Of course, the resolution of October 16th, 1923, must be considered as (in necessary effect) a formal repudiation of the prior adoption of the wage scale; and, therefore, the question presented is whether by such adoption the city became bound irrevocably to the wage scale "suggested" by a state commission or retained power to repeal its prior action and resume its former power and duty to fix the compensation of its own employes. In our judgment, the matter is free from doubt. The primary power of the city in that line is undeniable and undenied. Public considerations of a fundamental character require that if the legislature proposes to take away this power and intrust this responsibility to a state-wide appointive supervisory commission, the ex-

pression of its will should be couched in the plainest of terms. We are utterly unable to read any such intent in the statute. It erects the civil service commission into an advisory body as to pay scales, whose advice the municipality may accept or reject, adopt or discard, at its own discretion. The commissioners properly considered that as the elective governing body the responsibility was theirs of fixing the pay of its servants at figures fair to both employes and taxpayers. Hence, the new wage scale of October 16th, 1923, adopted by the city, was a valid one, and the civil service commission was bound to certify the pay at the figures of that scale.

The demurrer to the return is sustained, and peremptory writs awarded, but only after the amendment of the proceedings by framing for each relator an alternative writ, return and demurrer. Such writs will be allowed as of course.