MAURICE A. SALEMBIER,

*vs.*

GREAT NECK BOND & MORTGAGE CORPORATION,
a Delaware corporation.

*New Castle, August 4, 1937.*

*Stewart Lynch,* for complainant.

*Christopher L. Ward, Jr.,* of the firm of Marvel, Morford, Ward & Logan, for defendant.

THE CHANCELLOR: The defendant was organized in 1925. Its business was that of lending money on the security of real estate mortgages. During the years of the depression which followed upon the year 1929, real estate values suffered an exceedingly severe shrinkage. The defendant found it impossible to make collections in sufficient volume to avoid losses and it was forced to take title to properties on which it held mortgage liens.

The titles to real estate acquired by it on mortgage foreclosures, were placed by the defendant in Graybon Holding Corporation, a New York corporation. This cor-

poration was a subsidiary of the defendant, having an outstanding issue of only one hundred shares of stock, all of which the defendant owned.

The defendant after 1929 was constantly losing money. Its directors and stockholders resolved upon its dissolution. It was formally dissolved on May 20, 1933.

The corporation continued to function, as the statute allowed it to do, for the period of three years, for the purpose of winding up its business. The severity of the depression was such that, as the end of the three year period for winding up approached, the process of liquidating its assets was about as far from completion as it was at the beginning of the period.

The directors considered that it would be wasteful to an extreme degree to subject the assets to sale. The stockholders by overwhelming vote of both preferred and common stock concurred in this view. They agreed with the directors that the wisest course to pursue would be to adopt some plan whereby the assets could be liquidated to cash in an unprecipitate manner and under more favorable real estate market conditions than were then, 1936, prevailing. The complainant himself was of this view. He differed with the directors and other stockholders only upon the personnel of the liquidating agent. He desired a bank to be selected to conduct the gradual liquidating process. The directors and overwhelming number of stockholders were of the ultimate opinion that the plan finally adopted promised to be the most efficacious and economical.

The plan finally adopted was as follows. All the defendant's assets, except the one hundred shares of stock of Graybon Holding Corporation which the defendant held, were transferred to the Graybon Holding Corporation, the defendant's wholly owned subsidiary. At the same time the defendant transferred and assigned all its interest in the

said one hundred shares of the Graybon Holding Corporation to its preferred stockholders, each preferred stockholder receiving an interest therein equal to his proportionate holding of preferred stock. (It is agreed that there was no equity in the assets in favor of the common stock.) There were 11,730 shares of the defendant's preferred stock outstanding. Therefore each share acquired by the assignment 1/11,730 interest in the assigned one hundred shares of Graybon Holding Corporation stock. The assignment was delivered to Graybon Holding Corporation which set up on its stock ledger the respective interests in the one hundred shares that belonged to the defendant's preferred stockholders. Thereafter Graybon Holding Corporation caused its authorized stock to be increased to 11,370 shares and caused to be issued certificates for whole shares to the persons respectively entitled thereto as per the entries on its stock ledger.

The assignment by the defendant of all of its assets (other than the one hundred Graybon shares) and the transfer of the one hundred Graybon shares, took place just one day before the expiration of the three year period during which the defendant's corporate existence was extended for winding up its affairs. The exact date was May 19, 1936.

Thus on that date the defendant had disposed of all of its assets. The net result was that the defendant had wound up its affairs by distributing, directly or indirectly, all of its assets to the preferred stockholders in specie.

No fraud is charged or intimated. The assets were of a kind that, if they were put up for immediate sale very little would have been received therefor. That is not denied. As a sensible business way of handling the problem of winding up the defendant's business, it seems to me the arrangement was highly commendable.

The complainant, however, insists that it was entirely without warrant in law. Now his contention in that regard is one that I do not feel it necessary to pass upon. Granting it, should this court appoint a receiver for the corporation?

What could the receiver do, now that the facts are accomplished? The corporation is absolutely denuded of its assets. The stockholders have them in one form or another and there are no creditors' rights involved. The only thing I know of that a receiver could do, would be to institute proceedings in New York in an endeavor to undo all that has been done and thereby secure a return of the assets to him as the representative of the defendant. If he succeeded, it would be necessary to secure an ancillary receiver in New York state where the assets have their situs, in order to conduct their gradual liquidation.

The mere mention of activities of that kind to one who has acquaintance with such matters, is sufficient without more to indicate the heavy costs and expenses to which the estate, if success attended the efforts, would be subjected. The burden of expense would be heavy.

The complainant knew as early as April 16, 1936, of the proposal to wind up the defendant's business in the manner finally adopted. The meeting of stockholders to consider the matter was to convene on April 27, 1936. On the sixteenth the complainant had notice of this meeting and what action was proposed to be taken thereat. It would of course require some time after the meeting, if action on the proposal was favorable, to accomplish its results. It took as a matter of fact until May 19th.

Now it appears to me that the time for the complainant to ask this court to appoint a receiver was during the period when the acts he complains against were still *in fieri.* He had ample time in that period to take preventive steps.

He waited, however, until September 30, 1936, before filing his bill. I am of the opinion that he waited too long.

If the complainant has any right to a remedy it should be in some other form than through a liquidating receivership.

The bill will be dismissed. Decree accordingly.