80 N.J. Super. 472 (1963)
194 A.2d 35
THOMAS J. CARROLL, DAVID NAPOLI, BERNARD GERRITY, EUGENE DIXON AND THOMAS KACZKA, PLAINTIFFS,
v.
JOHN P. CAUFIELD, AS DIRECTOR OF THE NEWARK FIRE DEPARTMENT OF THE CITY OF NEWARK, AND THE CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 27, 1963.
*473 Mr. William J. Gearty for plaintiffs (Mr. Thomas E. Durkin, Jr., attorney; Mr. William J. Gearty on the brief).
Mr. Joseph A. Ward for defendants (Mr. Norman N. Schiff, attorney and on the brief).
SUGRUE, J.C.C. (temporarily assigned).
This matter is before the court on defendants' motion for summary judgment and plaintiffs' cross motion for the same relief.
On the following facts there is agreement among the adversary parties. Each of the five plaintiffs was an employee of the City of Newark prior to his employment with the Newark Fire Department. Thomas J. Carroll became a member of the department on February 1, 1960 after having been assigned to the Police Telegraph Division since May 1, 1955; David Napoli became a member of the department on March 1, 1959 after serving as a patrolman for the Newark Police Department since April 28, 1958; Bernard Gerrity held the same post from April 28, 1958 until his appointment to the *474 department on March 1, 1959; Eugene Dixon also joined the department on March 1, 1959 after having served the City of Newark as a patrolman since December 10, 1956; Thomas Kaczka, since July 9, 1951 an employee of the City of Newark assigned to the Fireline Department, became a member of the Newark Fire Department on March 1, 1959.
Basing their claims, diverse as to dollar amounts but the same as to the issue involved, on their previous municipal employment, the plaintiffs invoke R.S. 40:11-5 which reads as follows:
"Whenever heretofore there has been or hereafter there may be effected by appointment, transfer, assignment or promotion, of a municipal employee, to any other department or position in the municipal employ, or to a position or department of the county government; or when there has been or hereafter may be effected by appointment, transfer, assignment or promotion, of a county employee, to any other position or department in the county employ, or to a department or position of the municipal government, in counties of the first or second class, the period of such prior service in said county or municipal employment, for any purpose, whatsoever, shall be computed as if the whole period of employment of such employee had been in the service of the department, or in the position, to which the said employee had been appointed, transferred, assigned or promoted."
Each plaintiff alleges that by virtue of this statute he is entitled to have been paid at a rate reflecting his previous service rather than at the rate provided for new employees of the Newark Fire Department.
It is the contention of defendants that R.S. 40:11-5 is inapplicable to plaintiffs. This contention is based on the Fire Department salary ordinance wherein the salaries paid are based on an "in service" requirement, and the statutes authorizing such ordinances: R.S. 40:48-1, N.J.S.A. 40:46-23, N.J.S.A. 40:69A-29. It is defendants' view that to uphold plaintiffs' position would be to impair seriously the efficacy of those statutes, to interfere seriously with the proper conduct of municipal affairs, to produce unreasonable results and to be beyond the intent of the Legislature.
*475 Specifically alluding to the facts of the case, defendants claim alternatively that plaintiffs are barred by reason of release, waiver and estoppel. They point out that since the time of their employment plaintiffs have accepted checks inscribed,
"ACCEPTED IN FULL PAYMENT FOR ALL SERVICES RENDERED BY ME, LESS AUTHORIZED DEDUCTIONS."
An additional claim is want of diligence on plaintiffs' part in pursuing their claims. In countering defendants' views, plaintiffs contend that their interpretation of R.S. 40:11-5 will lead to no unreasonable result and will not in any way impede muncipalities in performing their duly authorized services. They contend, further, that the statute cited is subject to no judicial construction, being clear on its face and clearly applicable to their circumstances.
As to waiver, release and estoppel, plaintiffs contend that defendants were on notice of their claims, by virtue of the mere existence of R.S. 40:11-5. Further, they deny that they failed to advise an authorized agent of the defendants of those claims. Accepting the checks inscribed as quoted above, was, they contend, an economic necessity for which they should not be penalized.
Finally, in reply, defendants dispute the limited application which plaintiffs attribute to their interpretation. Rather, they contend that such an interpretation will have far-reaching and injurious consequences to municipalities. As defendants read R.S. 40:11-5, it is not designed to apply to those persons (such as plaintiffs herein) who voluntarily resign from municipal employment in one department and accept employment after successfully passing a Civil Service examination to fill vacancies in another department. In addition, they reassert their claim of waiver and estoppel by denying that any protest was ever made to an agent authorized to receive it.
This case must turn, then, on the intent of the Legislature in enacting R.S. 40:11-5. It is clear that the interpretation *476 urged by plaintiffs would cast its shadow on certain sections of the Civil Service Act. For example, R.S. 11:22-6 provides for a probationary period of three months following appointment or promotion to a new position. N.J.S.A. 11:22-34 provides that seniority be given due consideration in making promotions. Could the probationary period be held to apply to one who already has lengthy service in another Civil Service post? Should this service be counted as seniority, thus entitling a new recruit to the Fire Department, for example, who has had five years in the Police Department, to priority on the promotion list over a four-year veteran of the Fire Department? Can it be said that such a result is any more incongruous than having newly appointed firemen paid at a higher rate than firemen with three or four years of experience as is urged by plaintiffs herein? Did the Legislature intend such an effect?
Even more basically at issue is the question of whether or not the Legislature intended that R.S. 40:11-5 be applicable to those situated as plaintiffs herein, thus limiting the power of the municipality to set salary schedules by ordinance for its firemen. Defendant city claims this power under three statutes.
R.S. 40:48-1 provides:
"The governing body of every municipality may make, amend, repeal and enforce ordinances to:

* * * * * * * *
Officers and employees; duties, terms and salaries. 3. Prescribe and define, except as otherwise provided by law, the duties and terms of office or employment, of all officers and employees; and to provide for the employment and compensation of such officials and employees, in addition to those provided for by statute, as may be deemed necessary for the efficient conduct of the affairs of the municipality; * * *"
N.J.S.A. 40:46-23 provides:
"The governing body may, by ordinance, notwithstanding any maximum or minimum limitation fixed by statute, fix and determine the salaries, wages or compensation to be paid to each officer and employee *477 of the municipality who, by law, is entitled thereto * * * [exceptions not pertinent]."
In N.J.S.A. 40:69A-29 it is provided:
"Each municipality governed by an optional form of government pursuant to this act shall, subject to the provisions of this act or other general laws, have full power to:
(a) organize and regulate its internal affairs, and to establish, alter, and abolish offices, positions and employments and to define the functions, powers and duties thereof and fix their term, tenure and compensation; * * *"
The latter is a section of the Faulkner Act under which the City of Newark operates.
In determining the intent of the Legislature, R.S. 40:11-5 must be read in the light of these three statutes, since the interpretation of R.S. 40:11-5 urged by plaintiffs would impose a severe limitation on the powers granted by these statutes. No cases having been found on this point, it becomes necessary for the court to invoke certain precepts of judicial construction as aids in arriving at its decision.
"Statutes in pari materia are construed together so as to effectuate general legislative policy." Lynch v. Borough of Edgewater, 8 N.J. 279 (1951); Scatuorchio v. Jersey City Incinerator Authority, 14 N.J. 72 (1953); Palmer v. Kingsley, 27 N.J. 425 (1958).
Statutes in pari materia, although in apparent conflict, are so far as reasonably possible construed to be in harmony with each other. But if there is an irreconcilable conflict between the new provisions and the prior statutes relating to the same subject matter, the former will control as it is the later expression of the legislature." 2 Sutherland, Statutory Construction (3d ed. 1943), sec. 52-1, p. 531.
It is noteworthy that the enactment of the Faulkner Act was subsequent to the enactment of R.S. 40:11-5.
A further precept is that in the reading of these statutes the court must be guided by the rule that this policy "is to be found, not by the mechanical or formal application of words and phrases, but by the exercise of reason and judgment." Wright v. Vogt, 7 N.J. 1 (1951).
*478 The clearest and most authoritative statement of general policy as regards municipal powers is to be found in New Jersey Constitution of 1947, Art. IV, Sec. VII, par. 11:
"Liberal construction of constitutional and statutory provisions concerning municipal corporations and counties; powers of counties and municipal corporations
The provisions of this Constitution and of any law concerning municipal corporations formed for local government, or concerning counties, shall be liberally construed in their favor. The powers of counties and such municipal corporations shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law."
In applying this policy to an apparent conflict between N.J.S.A. 11:1-1 et seq. (Civil Service) and the Faulkner Act, in Newark v. Department of Civil Service, 68 N.J. Super. 416, 425 (App. Div. 1961), the court said:
"It was the intendment of the Faulkner Act to confer the greatest possible power of local self-government, consistent with the New Jersey Constitution, upon municipalities adopting a plan pursuant to the act, as well as to reduce the vast number of types of local government with all their varying rules and regulations, by providing a flexible general pattern adaptable to the various communities and their needs."
In Mentus v. Irvington, 79 N.J. Super. 465, 471 (Law Div. 1963), the court said:
"All grants of power to municipalities adopting a plan under the act were to be liberally construed in favor of the municipality."
That this policy antedates both the Faulkner Act and the New Jersey Constitution of 1947 is evident in D'Aloia v. Civil Service Commission, 101 N.J.L. 427 (Sup. Ct. 1925), a case of a conflict between a wage scale for municipal employees of Newark propounded by the city and one propounded by the Civil Service Commissioner, an agency of the State. The court held:
*479 "The primary power of the city in that line is undeniable and undenied. Public considerations of a fundamental character require that, if the Legislature proposed to take away this power and intrust this responsibility to a state wide appointive supervisory commission, the expression of its will should be couched in the plainest of terms."
This test of intent is equally applicable to R.S. 40:11-5. Is the intent of the Legislature to limit the power of municipalities in the face of its generally contrary policy couched in terms so plain as to meet this test? To determine the answer the court may look behind the face of the act as well as at the act itself.
"The reason of the law, i.e., the motive which led to the making of it, is one of the most certain means of establishing the true sense of the words." Caputo v. Best Foods, 17 N.J. 259, 264 (1955).
This "true sense of the words" may be sought in the legislative history and the preamble to R.S. 40:11-5.
"In performing our judicial function we may resort freely to the pertinent statutory history for such aid as it may furnish in ascertaining the true sense and meaning of the language used." Westinghouse Elec. Corp. v. Board of Review, 25 N.J. 221, 226 (1957).
The preamble to R.S. 40:11-5 reads:
"An Act to conserve the seniority rights of municipal employees and county employees appointed, transferred, assigned or promoted, to other positions or departments in the municipal employ, or in the county service, in counties of the first class of this State."
The bill as introduced was accompanied by the following statement:
"At the present time, on account of the lack of legislation on the subject, municipal or county employees, in counties of the first class of this State, who have been appointed, transferred, assigned or promoted to other positions or departments, must begin as new employees thereby losing their seniority rights, which their previous service entitled them to. This act merely establishes a seniority right which has heretofore been denied."
*480 Each of these quotations appears to be protective in tone. The wording of each (as well as R.S. 40:11-5 itself) implies passivity in the employee. Each indicates that the act is designed to supply a measure of security for the employee who would otherwise, through forces beyond his control, be deprived of certain of his rights insofar as continuity of service as a public employee is concerned. The accompanying statement is the most clear as it cites those who "must begin as new employees thereby losing their seniority rights, which their previous service entitled them to."
Plaintiffs in this action are volunteers. Each left employment in one branch of municipal government to enter employment in another. The court takes judicial notice of the fact that salary schedules are published with the announcement of the Civil Service examination which each plaintiff took in order to qualify for appointment to the position he now holds. Presumably, each plaintiff was aware of the salary scale when he chose to join the Fire Department.
It would be a distortion of R.S. 40:11-5 if the court were to hold  in the face of legislative policy to the contrary, as outlined above and a careful reading of the statute and its attendant background  that the intent of the Legislature was to include within the purview of the act those situated as are plaintiffs. Rather, all indications are that the Legislature intended otherwise.
Accordingly, having found that R.S. 40:11-5 is not applicable to the situation of these plaintiffs and not superior in status to the statutes cited, it becomes unnecessary to consider the other issues raised in this matter.
Defendants' motion for summary judgment is granted. Plaintiffs' cross motion is denied.