149 N.J. Super. 503 (1977)
374 A.2d 70
RAYMOND D. TAURECK, LAWRENCE J. KELLY, WILLIAM BYERS, JR., JOSEPH W. KRAJNIK AND ROBERT COBB, PLAINTIFFS,
v.
CITY OF JERSEY CITY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided April 26, 1977.
*506 Mr. Dennis W. Blake for plaintiffs (Messrs. Messineo & Messineo, attorneys).
Mr. Paul W. Mackey for defendant (Mr. Thomas S. Fodice, Acting Corporation Counsel for City of Jersey City).
THURING, J.S.C.
The parties move by cross-motions for summary judgment. Plaintiffs, members of the Jersey City Fire Department, commenced an action in lieu of prerogative writs pursuant to R. 4:69 seeking relief from Jersey City's refusal to accede to their request for prior service credit which they allege should be applied to their (a) vacation pay, (b) longevity pay, and (c) retroactive back pay. Plaintiffs *507 assert that N.J.S.A. 40A:9-5, as a matter of law, entitles them to such credit.
It is conceded that plaintiffs' prior service with either a municipality or county arose as follows:
1. Taureck was employed as a fireman in New Brunswick from July 4, 1974 until September 7, 1975 and commenced employment with defendant as a firefighter on September 29, 1975.
2. Kelly was employed as a fireman in Weehawken from January 6, 1972 until September 28, 1975 and commenced employment with defendant as a firefighter on September 29, 1975.
3. Byers was employed by the Hudson County Board of Freeholders from October 31, 1967 until November 13, 1972 on which date he was appointed to defendant's fire department.
4. Krajnik was employed by the Hudson County Board of Freeholders from May 28, 1970 until January 28, 1976. He was appointed a Jersey City firefighter on September 29, 1975.
5. Cobb was employed by the Weehawken Fire Department from April 6, 1972 until September 25, 1975, and was appointed to the defendant's fire department on September 29, 1975.
Defendant contends that plaintiffs are not entitled to a credit for prior services with other municipalities and counties, raising six affirmative defenses: (1) failure to state a claim upon which relief may be granted; (2) statute of limitations; (3) waiver of statutory rights by acceptance of collective bargaining agreement; (4) estoppel; (5) laches and (6) failure to exhaust administrative remedies.
In its cross-motion for summary judgment, defendant avers that plaintiffs' rights with respect to prior service credit are governed solely by the collective bargaining agreements between the City of Jersey City and the Jersey City Firefighters Association, relying on N.J.S.A. 34:13A-1 *508 et seq. (the New Jersey Employer-Employee Relations Act, hereinafter EERA). Defendant asserts that its position is supported by N.J.S.A. 40A:9-10.1, which provides that the governing body of a municipality may contract with an employee to perform duties at a lesser salary than is "otherwise fixed." Defendant also contends that plaintiffs Krajnik and Byers are not entitled to prior credit because their prior service was not as firemen.
Preliminarily, the court will deal with certain of defendant's ancillary defenses. An action in lieu of prerogative writs will lie in a situation wherein a statutory benefit is demanded from the governmental entity that has the asserted obligation to grant it and it is denied. Cf. Ward v. Keenan, 3 N.J. 298, 308 (1949).
As to the time limits provided for the filing of a complaint in lieu of prerogative writs, R. 4:69-6(a) and (c) are controlling. R. 4:69-6(a) reads as follows:
No action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing or relief claimed, except as provided by paragraph (b) of this rule.
The court finds that defendant informally denied plaintiffs' request for prior service credit on April 26, 1976. Plaintiffs filed their complaint on November 15, 1976. Authority to enlarge the 45-day time period where the interest of justice requires can be found in R. 4:69-6(c). See Bernstein v. Krom, 111 N.J. Super. 559, 564 (App. Div. 1970).
Although plaintiffs assert that defendant's violation of N.J.S.A. 40A:9-5 is a continuing one, thereby tolling the limitation period, the court finds that even if that were not the case, i.e., if the court was to find that plaintiffs' action accrued on April 26, 1976, under Bernstein, supra, the interest of justice requires that plaintiffs' claim be heard. Additionally, disposition on the merits may help clarify the law which appears to be unsettled in this area.
*509 While defendant's claim that plaintiffs failed to exhaust administrative remedies by seeking relief through grievance machinery outlined in the collective bargaining agreement, it is clear that the nature of the controversy is grounded solely in law. Because it would be tantamount to "useless delay," the exhaustion of administrative remedies is not here required. Brunetti v. New Milford, 68 N.J. 576, 589 (1975); Nolan v. Fitzpatrick, 9 N.J. 477, 486 (1952). In any event, the requirement of exhaustion of remedies is neither jurisdictional nor absolute in terms. Discretion is vested in the trial court "to determine whether the interests of justice require that the administrative process be bypassed." Durgin v. Brown, 37 N.J. 189, 202-203 (1962).
N.J.S.A. 40A:9-5 and its judicial treatment will now be considered, followed by a consideration of the EERA and its relevant provisions, particularly N.J.S.A. 34: 13A-8.1. Ultimately, the court must determine whether these statutes are to exist side by side.
In Pfitzinger v. Public Employment Retirem't System Bd. of Trustees, 62 N.J. Super. 589 (Law Div. 1960), the court stated:
In construing legislative intent [the court] must look to the objective sought to be attained, the nature of the subject matter, the contextual setting and all statutes in pari materia. The statute must be construed as a whole with reference to the system of which it is a part. [at 601; citations omitted]
Further,
The Legislature is presumed to be familiar with its own enactments and to have passed or preserved cognate laws with the intention that they be construed to serve a useful and consistent purpose. Courts have the duty of reconciling apparently conflicting statutes so as to give effect to both expressions of the Legislative will. [Coast Cigarettes Sales v. Long Branch Mayor & Council, 121 N.J. Super. 439, 449 (Law Div. 1972)]
*510 N.J.S.A. 40A:9-5 reads as follows:
Whenever heretofore or hereafter a transfer has been or shall be effected by appointment, assignment or promotion of a municipal employee to any other department or position in municipal employment, or to a position or department of the county government; or of a county employee to any other position or department in county employment, or to a department or position of a municipal government, in counties of the first or second class, the period of such prior service in said county or municipal employment, for any purpose whatsoever, shall be computed as if the whole period of employment of such employee had been in the service of the department, or in the position, to which the said employee had been transferred.
This enactment amended R.S. 40:11-5 in various grammatical respects, the most significant by deleting the article "the" from its place immediately preceding "municipal employment," "county employment" and "municipal government," thus removing the previous restriction on an employee from transferring his prior employment credits when he transfers to a position out of the initial county of employment.
In Libby v. Union Cty. Freeholder Bd., 125 N.J. Super. 471 (App. Div. 1973), plaintiffs, county employees, sued defendant for longevity pay based on N.J.S.A. 40A:9-5. All plaintiffs had previously been employees of various Union County municipal police departments. Libby arose, like the present controversy, in the context of cross-motions for summary judgment. The court held that the statute in question applied to cases of voluntary transfer where an employee chose to seek new employment, denying defendant's contention that only involuntary transfer triggered operation of the statute. Defendant's theory, the court noted, would render the legislation useless since involuntary transfers are not cognizable on a significant scale.
Libby further held that when a municipal employee leaves his employment and is immediately thereafter appointed to a position in county government, such appointment *511 is within the intent and meaning of N.J.S.A. 40A:9-5 and entitles such employee to compute longevity in accordance with the statutory provisions. Libby was the first reported judicial construction of N.J.S.A. 40A:9-5.
A year later the Appellate Division decided Fivehouse v. Passaic Valley Water Comm'n, 127 N.J. Super. 451 (App. Div. 1974), certif. den. 65 N.J. 565 (1974). There, plaintiff sued for longevity pay computed on the basis of her prior municipal employment with the City of Paterson and with the Paterson Housing Authority, relying on N.J.S.A. 40A:9-5. Plaintiff was denied relief based on the collateral determination that defendant was a public agency subject to N.J.S.A. 11:3-1 et seq. (Civil Service) with respect to tenure, classification and compensation, and thus its employees were not subject to N.J.S.A. 40A:9-5.
The court in Fivehouse stated that the benefits conferred by N.J.S.A. 40A:9-5 extended solely to municipal employees who are transferred to positions in municipal or county employment, and vice-versa. As to the policy of the statute, see Koshliek v. Passaic Cty. Freeholder Bd., 144 N.J. Super. 336, 343 (Law Div. 1976), in which the court construed the collective bargaining agreement between the parties to allow plaintiff to receive credit for prior federal service even though he was a federal pensioner. That case hinged on the effect of a personnel rule promulgated by defendant county. However, the court noted that no policy existed compelling nonrecognition of plaintiff's prior federal service.
In 1975 Caldwell v. Township of Rochelle Park, 135 N.J. Super. 66 (Law Div.) was decided, also in the context of cross-motions for summary judgment. Plaintiff was employed as a patrolman in the Borough of Ramsey prior to becoming a patrolman in Rochelle Park. He worked in Ramsey from *512 June 1, 1964 until April 30, 1967. On May 1, 1967 he was appointed to the police department in Rochelle Park as a patrolman having two years' prior experience.
The issue before the court there was the applicability of N.J.S.A. 40A:9-5 as it related to transfer from employment in one municipality to employment in another municipality in the same county. Caldwell, noted that the Appellate Division in Libby, supra, did not refer to Carroll v. Caulfield, 80 N.J. Super. 472 (Law Div. 1963). Carroll had denied relief to five Newark firemen, holding that R.S. 40:11-5, the precursor to N.J.S.A. 40A:9-5, did not contemplate individuals who voluntarily left their prior employment. There can be no doubt that Carroll was overruled, sub silentio, by the Appellate Division in Libby. Parenthetically, Jersey City's reliance on Carroll in Point III of its brief is also misapplied. That point asserts that prior credit, when appropriate, can be given only to former firemen. In any event, this court need not consider Carroll in light of a trial court's duty to follow rulings of the Appellate Division. Reinauer Realty Corp. v. Paramus, 34 N.J. 406, 415 (1961).
In Caldwell, supra, as noted, plaintiff had bargained for the salary of a patrolman with two years' prior service. He had been granted that status in the township's 1967 resolution of appointment and accepted it, both parties having relied on the then status of the law. The court, in holding N.J.S.A. 40A:9-5 applicable, stated that retroactivity to the effective date of the statute should be discretionary, depending on the circumstances, including the presence of defenses such as waiver and laches. Plaintiff in Caldwell was granted reimbursement for additional compensation, including benefits from and after July 1, 1971, the effective date of N.J.S.A. 40A:9-5. Significantly, collective bargaining and the EERA were not there involved.
In Parelli v. Civil Service Dep't, 138 N.J. Super. 364 (App. Div. 1976), aff'd o.b. 72 N.J. 480 (1977), the *513 court stated, in contemplating the purview of N.J.S.A. 40A:9-5, that
Whatever may be the effect of N.J.S.A. 40A:9-5 in areas remaining subject to the exclusive jurisdiction of counties and municipalities adopting civil service, such as salaries and wages [see N.J.S.A. 11:24-1], we are satisfied that to the extent that any conflict or inconsistency may exist between the provisions of N.J.S.A. 40A:9-5 and the Civil Service Act regarding seniority rights and the computation of seniority for purposes of promotion, the provisions of the Civil Service Act prevail. [at 366; citations omitted; emphasis supplied]
It is noteworthy that plaintiffs herein do not seek seniority, but rather credit for vacation pay, longevity pay and retroactive back pay.
In reviewing N.J.S.A. 40A:9-5 the language which includes the word "shall" clearly appears to be mandatory insofar as it confers benefits on those eligible. Naturally, whether a statute is mandatory or directory is largely a question of surmising the intent of the Legislature. 2A Sutherland, Statutory Construction (Sands ed. 1973), § 57.02 at 414. Where the language of a statute is clear and unambiguous, courts may hold that the construction intended by the Legislature is obvious from the language used. Although the form of the verb in the statute, e.g., "may," "shall," "must," is the most significant consideration bearing on whether a statute is mandatory or directive, it is not conclusive. Where the word "shall" is used in a statute the presumption is that its use is imperative and not merely directory, unless the character of the legislation or the context justifies a different meaning. Ervolini v. Camden Cty., 127 N.J.L. 473 (Sup. Ct. 1941).
The court finds that the benefits conferred by N.J.S.A. 40A:9-5 are mandatory and the court's ultimate decision will reflect that determination.
The benefits conferred by N.J.S.A. 40A:9-5 are viewed by this court to be vested rights. An employee is clothed with these rights prior to his representatives' engagement *514 in any collective bargaining. The employee does not lose such rights simply by the failure of the representative to bargain concerning them.
The question of whether the statutory right was waived in this case must be answered in the context of whether the benefits under N.J.S.A. 40A:9-5 are negotiable. The court holds that the statutory benefits of N.J.S.A. 40A:9-5 are not negotiable. Further, in this case the court finds that the nebulous state of the law, until recently prevented a waiver, as asserted by defendant, which involves the "intentional relinquishment of a known right" under circumstances where a party knew his rights and deliberately intended to relinquish them. West Jersey Title Co. v. Industrial Trust Co., 27 N.J. 144, 152 (1958); State v. Morgenstein, 147 N.J. Super. 234 (App. Div. 1977); Allstate v. Howard Savings Inst., 127 N.J. Super. 479, 487-489 (Ch. Div. 1974). Here, plaintiffs asserted their rights with reasonable dispatch after they became aware of them.
The equitable defense of laches involves a delay for a length of time which, unexplained and unexcused, is unreasonable under the circumstances and has been prejudicial to the other party. West Jersey Title Co., supra, 27 N.J. at 153. In this controversy plaintiffs are excused due to the recent judicial interpretation of N.J.S.A. 40A:9-5. The court is aware of the reference in Libby, supra, to the fact that a consideration of the defenses of waiver and laches was unripe for determination on cross-motions for summary judgment. 125 N.J. Super. at 474. However, the court finds that the facts before it allow for an intelligent resolution of those defenses. There is no indication that plaintiffs knowingly waived their rights.
The tension in the present controversy exists as a result of defendant's assertion that the EERA (N.J.S.A. 34: 13A-1 et seq.) controls the issue in the case by supervening N.J.S.A. 40A:9-5. Defendant's contention is that plaintiffs by engaging in collective bargaining during the *515 years in question (1972-1977) lost the benefits contained in N.J.S.A. 40A:9-5.
This position is, according to defendants, supported by N.J.S.A. 34:13A-8.1. Prior to January 20, 1975 such provision read:
Nothing in this act shall be construed to amend or modify, or to preclude the renewal or continuation of any agreement heretofore entered into between any public employer and any employee organization, nor shall any provision hereof amend or modify any statute of this State.
N.J.S.A. 34:13A-8.1, in relevant part, now reads:
* * * nor shall any provision hereof amend or modify any pension statute or statutes of this State.
As a result of this amendment defendant contends that the terms of collective bargaining agreements entered into under EERA could "modify and supersede provisions of statutes governing employment conditions of public employees" (with the singular exception of pension statutes). In sum, defendant contends that where formerly certain terms and conditions of public employment were non-negotiable, such as the benefits derived from N.J.S.A. 40A:9-5, now pension benefits are the only non-negotiable items.
Defendant also argues that various clauses of the collective bargaining agreements entered into between Jersey City and the Uniform Firefighters Association, Local 1066, further demonstrate that such agreements were intended as the complete residuum of rights and liabilities of the parties. E.g., Article XXXI of 1976-1977 agreement reads as follows:
This agreement ... represents the complete and final understanding on all bargainable issues which were or could have been the subject of negotiations.
Compensation and vacation schedules are included in each contract. Compensation is one of the terms and *516 conditions of employment which are subject to negotiation within the contemplation of the EERA. New Jersey Civil Service Ass'n v. Mayor, Camden, 135 N.J. Super. 308, 312 (Law Div. 1975).
However, the contracts do not contain provisions concerning credit for prior service with other municipalities or counties. According to defendant, such prior service could have been the subject of negotiations, but was not. The city asserts that it could have fairly assumed that the agreements would control salary and vacation schedules, and that state law would not so control. This assertion crystallizes the issue presented. Does the solidification of a collective bargaining agreement remove the applicability of N.J.S.A. 40A:9-5 in this situation? The city maintains that if its position is ultimately upheld and it is granted summary judgment, the dispute would then properly be the subject of an EERA grievance procedure pursuant to N.J.S.A. 34:13A-5.3, which contemplates the involvement of the Public Employment Relations Commission (PERC).
At the outset, even assuming that defendant's position would prevail, the effective date of N.J.S.A. 34:13A-8.1 was January 20, 1975. Under a reading of these provisions as previously worded, supra, defendant's contention could not be supported. Thus, it is clear that under the prior language the statutory right granted under N.J.S.A. 40A:9-5 was unaffected by N.J.S.A. 34:13A-1 et seq.
The court thus views the argument with respect to the amendment to N.J.S.A. 34:13A-8.1 only with reference to the latest agreement (January 1, 1976 through December 31, 1977). The facts present in this case have not arisen in any reported case in our State. However, the effect of the EERA generally on other legislation has been the subject of litigation. It is by this analogy, that the resolution of this issue will proceed.
Preliminarily, it is noteworthy that in the statement accompanying N.J.S.A. 34:13A-8.1 the following appears:
*517 * * * Section [8.1] is intended to give greater guidance to PERC and to courts in making the determination whether a particular issue is within the scope of negotiations. Section 6 provides that guidance without enacting a list of negotiable subjects. Questions concerning the scope of negotiations will still be resolved on a case-by-case basis, but both the administrative agency charged with enforcing this act and the courts will be aided by the statutory standard that the impact on terms and conditions of employment of the exercise of statutory duties by a public employer is negotiable.
N.J.S.A. 34:13A-8.1 is not without its critics. An editorial in the New Jersey Law Journal, 97 N.J.L.J. 708 (1974), attacked the failure of the Legislature to explain this provision. The article questioned specifically whether this language could be read or should be read to alter vested rights of civil service employees. See Parelli v. Civil Service Dep't, supra. See also, Note, "The Scope of Collective Negotiations in Public Employment Sector under L. 1974, c. 123," 2 Seton Hall Legis. J. 42 (1976). Of course, defendant argues that the provision does alter other statutory provisions and cites an analysis by Gerald L. Dorf, labor relations counsel for the New Jersey League of Municipalities, for the proposition that the net effect of the amendment to N.J.S.A. 34:13A-8.1 "will undoubtedly be to substantially weaken" statutory provisions contained in Titles 11, 18A, 40 and 40A. See "The New Jersey Employer-Employee Relations Act  How Senate Bill 1087 (c. 127) Affects Municipalities?," New Jersey Municipalities (Jan. 1975).
An added burden in this case is imposed by the lack of any legislative indications of the reach of N.J.S.A. 40A:9-5. Coupled with the uncertainty of the intendment of N.J.S.A. 34:13A-1 et seq. the task is novel and the course uncharted.
In Prosecutor's Detectives, etc., Ass'n Essex Cty. v. Hudson Cty. Freeholders Bd., 130 N.J. Super. 30, 46-47 (App. Div. 1974), certif. den. 66 N.J. 330 (1974), the court held that the EERA did not envision that the exercise of public employees of their right to act collectively "would constitute an instant eradicator of their vested rights under the Civil Service Act." The court concluded that employees were still *518 entitled to pursue Civil Service remedies. This case was decided before the amendment to N.J.S.A. 34:13A-8.1.
In Ass'n of N.J. State College Faculties v. Dungan, 64 N.J. 338 (1974), another case decided prior to the amendment of N.J.S.A. 34:13A-8.1, the court held that statutory terms of the EERA did not supervene the Board of Higher Education's overall supervisory responsibilities as set forth in Title 18A ("Education"). Further, the court held that legislative silence elsewhere would not allow for impairment of statutory power under the Education Law of the Board of Higher Education in promulgating tenure guidelines. See also, Rutgers Council v. New Jersey Bd. of Higher Ed., 126 N.J. Super. 53, 66 (App. Div. 1973).
Similarly, in Communications Workers v. Union Cty. Welfare Bd., 126 N.J. Super. 517, 531 (App. Div. 1974), the court declared that it was "obliged to continue to make a conscientious effort to effectuate the constitutional and legislative objective of the Employer-Employee Relations Act without frustrating the legislative goals of the welfare statute."
In Clifton Teachers v. Clifton Bd. of Ed., 136 N.J. Super. 336 (App. Div. 1975), plaintiff, the collective bargaining representative of teachers, attacked a lower court ruling allowing defendant board to condition payment of salary increments upon satisfactory service as determined by the superintendent of schools. The Appellate Division held that although the collective bargaining agreement contained an increment guide which authorized the board to withhold an increment for good cause and established a statutory policy, N.J.S.A. 18A:29-14 could not be frustrated by the mere promulgation of a salary guide as part of the collective bargaining contract. The court stated that
It is not legally necessary for the collective bargaining agreement to contain an express reservation of the right to withhold an increment for good cause, since that is a right granted by statute and one which must be accepted as underlying every negotiated contract. [at 339; emphasis supplied]
*519 The court also ultimately considered the inherent right of a school board to judge teacher performance. Id.
It has recently been stated that the clear legislative intent of EERA is that disputes over contractual terms and conditions of employment should be solved, if possible, through grievance procedures. Red Bank Bd. of Ed. v. Warrington, 138 N.J. Super. 564 (App. Div. 1974). The court stated (at 572-573) that the school laws could exist harmoniously with the EERA.
However, in Union Cty. Bd. of Ed. v. Union Cty. Teachers Ass'n, 145 N.J. Super. 435 (App. Div. 1976), the court held that whatever the breadth of the authority of PERC under N.J.S.A. 34:13A-1 et seq., "it does not extend to a grant of the power to compel a public employer to negotiate upon subjects" that the Legislature has expressly and by clear implication "delineated by statute." That case held that the reemployment rights of nontenured teachers are to be determined under N.J.S.A. 18A:28-9 by local boards of education, not by PERC.
In a reported case that considers the amendment, a court, in finding the EERA inapplicable to the controversy before it, stated in dictum that the "ambiguous amendment to N.J.S.A. 34:13A-8.1" could not serve as a basis for divesting the Civil Service Commission of its traditional and statutory authority over issues affecting the rights of civil service employees, including policemen and firemen, or for impairing the express legislative powers of municipalities to take measures for reasons of economy. Patrolmen's Benevolent Ass'n v. Elizabeth, 146 N.J. Super. 257 (App. Div. 1977).
The author of the commentary in 2 Seton Hall Legis. J. 42, supra, argued that the insertion of the word "pension" in N.J.S.A. 34:13A-8.1 "should not be read as implicitly bringing all matters other than those covered by pension statutes within the scope of negotiations." He further argued that the implied repeal of numerous statutes dealing with the prerogatives and powers of public employers and rights and benefits of public employees is not favored.
*520 The court is impressed with the logic that seems to emerge from the cases. It is clear that EERA does not support the proposition that every subject other than pension rights is negotiable. To so read the statute would severely thwart the intent of the Legislature in enacting prior statutes granting rights and benefits to employees and establishing obligations and prerogatives of public employers. For this reason the court holds that, as a matter of law, plaintiffs are entitled to the benefits of N.J.S.A. 40A:9-5 despite the unclarified language of N.J.S.A. 34:13A-8.1.
It is noteworthy that N.J.S.A. 34:13A-12 reads as follows:
Nothing contained in this act [N.J. Employer-Employee Relations Act formerly the Labor Mediation Act] shall be construed as interfering with, impeding or diminishing in any way any right guaranteed by law or by the Constitution of the State or of the United States. [Emphasis supplied]
Neither party has briefed this statute. However, the court, on its own motion, considers this provision which, in conjunction with its prior determination that N.J.S.A. 40A:9-5 is mandatory, indicates that N.J.S.A. 34:13A-1 et seq. will not be read so as to interfere with rights granted by statute.
N.J.S.A. 34:13A-5.3 reads in pertinent part as follows:
Notwithstanding any procedure for the resolution of disputes, controversies or grievances established by any other statute, grievance procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement.
This provision indicates that all disputes "covered by the terms" of the agreement shall be the subject of the grievance procedures contained in the contract. This court finds that credit for prior service under N.J.S.A. 40A:9-5 is not "covered" by the terms of the agreement and therefore grievance procedures are not applicable.
*521 Jersey City cites N.J.S.A. 40A:9-10.1 to buttress its argument. That statute reads as follows:
The board of chosen freeholders of any county or the governing body of any municipality may enter into a contract with any officer or employee of the county or municipality, as the case may be, to perform the duties of his office, position or employment at a lesser salary, wage or compensation than otherwise fixed and when the contract shall be entered into, it shall control the amount of such salary. [Emphasis supplied]
There was no legislative statement accompanying this provision and there has been no case law interpretation. The statute gives local governments the right to lower pay scales, but only an expansive reading of the statute would permit local governments to unilaterally remove benefits conferred by statute.
Clearly, the controversy before this court necessitates a judicial resolution. The effect of the EERA on extant statutes has unfortunately been determined on a case-by-case basis. This is not the most efficient course in light of the current status of crowded court calendars. The Legislature should, in its discretion, act expeditiously to define with particularity the relationship between the EERA and other long-standing state statutes, including, importantly, the effect of the statute here in question, namely, N.J.S.A. 34:13A-8.1. Cf. State v. DeSantis, 65 N.J. 462, 472 (1974).
For the aforementioned reasons the court concludes that
1. N.J.S.A. 40A:9-5 has mandatory application to the plaintiffs in this controversy.
2. Prior to January 20, 1975 no statutory conflict existed between N.J.S.A. 40A:9.5 and EERA; therefore, plaintiffs are entitled to credit for prior service.
3. The amendment of N.J.S.A. 34:13A-8.1 does not have the effect of precluding the granting of benefits conferred by N.J.S.A. 40A:9-5; therefore, plaintiffs are also entitled to such benefits subsequent to January 20, 1975.
4. Due to the recent clarification of the law, the defenses of waiver and laches have not been established.
*522 In sum, plaintiffs are entitled to credit accrued prior to the periods of their employment with the Jersey City Fire Department, for vacation pay, longevity pay[1] and salary, based on their prior employment with other municipalities or counties. Since all plaintiffs commenced employment with Jersey City as firefighters after July 1, 1971, the effective date of N.J.S.A. 40A:9-5, the court need not address the question of the right of plaintiffs to back payments. Cf. Caldwell v. Township of Rochelle Park, 135 N.J. Super. at 79-80.
Plaintiffs' motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied. Because of the prior unsettled state of the law, fairness dictates that interest not be allowed in the computation of monetary benefits due plaintiffs.
NOTES
[1] At oral argument, the parties advised the court that Krajnik and Byers did in fact receive longevity pay credit from defendant for prior service.